838 A.2d 1191

**POLICE PATROL SECURITY SYSTEMS, INC.**

v.

**PRINCE GEORGE'S COUNTY, Maryland.**

**No. 29, Sept. Term, 2003.**

Court of Appeals of Maryland.

Dec. 18, 2003.

704

Dean Knowles (Gerald C. Baker, Baker & Gaffigan, LLC, on brief), Lanham, for appellant.

Karen T. Zavakos, Assoc. County Atty. (David S. Whitacre, County Atty., on brief), for appellee.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

HARRELL, J.

Police Patrol Security Systems, Inc. ("Police Patrol"), a Virginia corporation authorized to transact business in Maryland, installs, maintains, and monitors electronic security and alarm systems in buildings. In 2001, Police Patrol requested of the County Executive of Prince George's County, Maryland that it be provided with the "name, address, and telephone number of every resident or business" that maintained an electronic security or alarm system in the county. Prince George's County ("the County") maintained records of such information because of its legislative requirement that such systems be registered with the County's police department. Police Patrol based its request on the Maryland Public Information Act ("the MPIA").[1] The County denied Police Patrol's request, claiming that a provision in its relevant registration ordinance made the information confidential. The Circuit Court for Prince George's County upheld the County's decision to deny the request.[2] Before the Court of Special Ap-

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Unless otherwise indicated, all statutory references in this opinion are to the MPIA, Maryland Code (1984, 1999 Repl. Vol, 2003 Cum.Supp.), §§ 10–611 to 10–628 of the State Government Article.

2. During the pendency of the Circuit Court action, a potentially relevant amendment to the MPIA took effect. The amendment allowed a custo-

peals decided Police Patrol's appeal, this Court, on its own initiative, issued a writ of certiorari. *Police Patrol v. Prince George's County,* 376 Md. 49, 827 A.2d 112 (2003).

## I.

Prince George's County Code ("PGCC") § 9–134 (1999 ed.) ("the Ordinance") requires the user of every building alarm system within the county to register with the County's police department. Alarm users are required to file an application and submit a fee as part of the registration process. Once registered, users must display an alarm registration sticker, bearing their permit number, at the main entrance of the building. The Prince George's County Police Department maintains a record of each applicant, including name, address, telephone number, and the type of alarm installed. According to the Ordinance, this information "shall be securely maintained and restricted to inspection only by police officers or County employees specifically assigned the responsibility for handling and processing alarm user permits in the course of official duties." PGCC § 9–134(d). The Ordinance also provides that it shall be deemed a misdemeanor for any County employee to disclose the information. *Id.*

Police Patrol's local attorney sent the following letter, dated 10 August 2001, to the Hon. Wayne Curry, then County Executive of Prince George's County:

"Dear Mr. Curry:

"This firm represents Police Patrol Security Systems, Inc. This is a freedom of information request under Md. State Government Code Ann. § 10–613 (2001) submitted on behalf of our client.

---

dian of records to deny inspection of records relating to "alarm or security systems or technologies" if the custodian believed that disclosure was contrary to the public interest. The County did not bring the amendment to the attention of the Circuit Court, and there is no indication from the sparse record that the Circuit Court considered or applied the amendment in its disposition of the case.

"We are requesting information related to Prince George's County residents, who subscribe to alarm services, be provided for our client's business use. Specifically, we request the name, address, and telephone number of every resident or business that subscribes to a security system provider that utilizes the services of or is registered with the Prince George's County Police Department.

"We are prepared to pay reasonable costs for compiling the requested information and reproducing it.

"Please contact our office if you have any questions regarding this request. Thank you for your prompt attention to this matter."

The request was forwarded to the Prince George's County Attorney's Office (Office of Law). That office responded with the following letter, dated 10 September 2001:

"Dear Mr. [ ]:

"The [Prince George's County] Office of Law is in receipt of your letter dated August 10, 2001 under the Maryland Public Information Act ('MPIA') and requesting information related to Prince George's County resident[s] that subscribe to alarm services. Specifically, you have requested the name, address, and telephone number of every resident or business that subscribes to a security system provider that utilizes the services of or is registered with the Prince George's County Police Department.

"Section 9–134(d) of the Prince George's County Code prescribes that alarm user permit information is securely maintained and is 'restricted to inspection only by police officers or County employees specifically assigned the responsibility for handling and processing alarm user permits in the course of official duties.' Further, the law provides criminal sanctions for revealing the information contained [in] the alarm user permit applications to any other person without the applicant's consent.

"As you know, the MPIA requires the custodian of a public record to deny disclosure of a public record if that document is confidential by law. Since Section 9–134 of the

Prince George's County Code prohibits disclosure of this confidential document, please be advised that the custodian hereby denies your request

"Please be further advised that you may seek judicial review of this decision pursuant to Section 10–623, State Government, Annotated Code of Maryland."

On 20 December 2001, Police Patrol filed a complaint in the Circuit Court for Prince Georges County. Police Patrol requested that the Circuit Court order the County to produce the records. The County responded by asserting that the Ordinance declared the information that Police Patrol requested to be confidential or privileged, within the meaning of those terms as used in the MPIA, and that the County therefore was required to withhold the information. The Circuit Court held a hearing on 10 October 2002, at the conclusion of which it denied Police Patrol's request for an injunction, relying on the rationale supplied by the County. Police Patrol appealed to the Court of Special Appeals, posing the following questions, which we have slightly rephrased.

1. Did the Circuit Court err by treating this action as a *mandamus* action instead of an action under the Maryland Public Information Act, thereby improperly placing the burden of proof on Police Patrol rather than Prince George's County.[3]

---

3. During the course of the hearing, the Circuit Court referred to the complaint as seeking a writ of *mandamus*. This confusion appears to be due to the erroneous docketing of the case by the Clerk's office as a *mandamus* action, instead of a request for an affirmative injunction. Police Patrol points out that the burden of proof in a *mandamus* action is on the moving party (which in this case would be Police Patrol), as opposed to the burden of proof in a suit challenging the denial of a request under the MPIA, where the custodian of records who denied the request (here the County), shoulders the burden. Police Patrol argues that, because the Circuit Court placed the burden of proof on Police Patrol rather than the County, the judgment should be reversed. This argument need not be resolved in this case because no material facts were in dispute. Because the facts in this case are undisputed, the issue of who bore the burden of proof is irrelevant. Accordingly, we shall focus our attention on the question of whether Police Patrol's request was denied rightfully by the County as a matter of law.

2. Did the Circuit Court err by finding that the request for information by Police Patrol Security Systems, Inc., was rightfully denied by Prince George's County.

## II.

### A.

The Circuit Court agreed with the County that § 9–134(d) of the Prince George's County Code makes personal information submitted by an applicant for an alarm user's permit confidential for the purposes of denying disclosure under the MPIA. As we shall discuss in more detail below, the General Assembly did not intend to allow counties, by local law or ordinance, to create additional exemptions or grounds for refusing disclosure of information required by the MPIA to be disclosed. The argument based on the Ordinance was the only ground advanced by the County for denying Police Patrol access to the information requested. Further, the Circuit Court appears to have relied solely on this rationale to support its decision to uphold the County's denial. That was erroneous as a matter of law.

In the period between the filing of Police Patrol's complaint and the Circuit Court's hearing and ruling in this case, however, a potentially relevant amendment, titled "Public Security Documents," was added to the MPIA.2002 Md. Laws, Chap. 3. The amendment was designated an "emergency measure" and took effect immediately upon enactment on 9 April 2002. The goal of the new amendment was to give records custodians greater discretion to deny requests for information that might compromise the security of buildings or facilities. One of its provisions allows a records custodian to withhold information about "alarm or security systems or technologies" for any building, structure, or facility if the disclosure of that information would be contrary to the public interest. The record of this case indicates that neither the Circuit Court nor the parties considered the new amendment at the Circuit Court hearing. Because of the language of the pertinent amendment to the MPIA and the timing of its enaction vis à vis the

proceedings in this case, the County must be given a fresh opportunity to consider Police Patrol's request.

### B.

■ The County argues that the Ordinance justifies non-disclosure of the personal information supplied by residents who applied for alarm user registration permits. The source of this justification begins with § 10–615(1) of the MPIA. Section 10–615(1) prohibits a custodian from disclosing public records if "by law, the public record is privileged or confidential." The Ordinance, at PGCC § 9–134(d), requires the County's Chief of Police to "securely" maintain registration information and restrict inspection to police or County employees, in the course of official duties, having responsibility for the pertinent registration process. A breach of the Ordinance in this regard is punishable as a misdemeanor. Thus, as the County's argument goes, the Ordinance is a "law" within the meaning of MPIA § 10–615(1) and that "law" essentially makes the information sought by Police Patrol "privileged or confidential" within the State statute.

We previously considered the interplay between local laws and the MPIA. In *Caffrey v. Dep't of Liquor Control*, 370 Md. 272, 805 A.2d 268 (2002), we determined that § 505 of the Montgomery County Charter was partially preempted by the MPIA. In the *Caffrey* case, Anthony Caffrey submitted a proposal to operate and manage a county-owned, retail off-sale alcoholic beverage store. Montgomery County denied his proposal. Caffrey subsequently filed a series of requests, under the MPIA, to inspect "various documents relating to the relevant proposal and selection process." 370 Md. at 278–79, 805 A.2d at 272. Montgomery County "produced some of the documents, but withheld others, citing various privileges and grounds for denial available under the MPIA." *Id.* Caffrey argued that Montgomery County, in withholding certain documents, had violated § 505 of the Montgomery County Charter as well as the MPIA. According to Caffrey, the County Charter "creates 'much narrower' exemptions from disclosure 'than those available under the MPIA,' and, 'in effect[,] waives

the broader, permissible exemptions under the MPIA.' " 370 Md. at 298, 805 A.2d at 283.

In considering Caffrey's argument, we divided the allowed grounds for denial of a request for information under the MPIA into two classes: the "mandatory denials" (§§ 10–615, 10–616, and 10–617) and the "permissible denials" (§ 10–618). In our discussion of mandatory denials, we noted that a county charter is subordinate to the public general laws of Maryland. 370 Md. at 302, 805 A.2d at 286 (citing Md. Const. Art. XI–A, § 1). A local government ordinance or charter that conflicts with a public general law enacted by the General Assembly is preempted and thus is invalid. *Id.* (citing *Montrose Christian Sch. Corp. v. Walsh,* 363 Md. 565, 579, 770 A.2d 111, 119 (2001)). Each of the mandatory denial provisions in the MPIA requires a custodian of records to refuse inspection of certain records. Thus, a county ordinance or charter that requires a custodian to act differently is preempted.

In *Caffrey,* this meant that the Montgomery County Charter, even if construed as granting greater accessibility to information than the MPIA, could not require County officials to disclose information that the MPIA's mandatory denial provisions required them to withhold. Under such circumstances, the Charter is preempted. In other words, home rule counties may not waive the duty to deny MPIA requests imposed on their officials by the mandatory provisions of the MPIA.

In contrast, the "permissible denial" provisions of the MPIA authorize custodians to exercise discretion in granting or denying requests for certain information. Therefore, home rule counties may direct or guide the exercise of this discretion, or even eliminate it entirely, by local enactment. To the extent that a county charter waives the authority vested in its officials to deny requests under the permissible denials provisions of the MPIA, that waiver may be effective. Montgomery County officials in *Caffrey* were not entitled to withhold information that the Montgomery County Charter required

them to disclose, even though that information might have been withheld under § 10–618 of the MPIA.[4]

Though the situation in the present case is reversed from that in *Caffrey*, with Prince George's County arguing that a county ordinance requires its officials to withhold information, the relevant legal principles to be applied are the same. According to PGCC § 9–134(d):

> The information contained in an alarm user permit application required by this Section and other information received by the Chief of Police through correspondence or communications with an alarm user shall be securely maintained and restricted to inspection only by police officers or County employees specifically assigned the responsibility for handling and processing alarm user permits in the course of official duties. If any employee of the County is found to have knowingly or willfully revealed the information contained in an alarm user permit application or in correspon-

---

4. The situation in *Caffrey* was complicated by the fact that the custodians of some of the requested records were attorneys representing Montgomery County. The *Caffrey* Court cited *Harris v. Baltimore Sun Co.* for the proposition that, "[i]f the requested public record is 'information relating to representation of a client,' which, if disclosed by the attorney, would place the attorney in violation of [Maryland Rule of Professional Conduct (MRPC) for Lawyers Rule] 1.6, the information is confidential under § 10–615(1) and not to be produced under the Act." *Harris*, 330 Md. 595, 604–05, 625 A.2d 941, 945 (1993) (quoting MRPC Rule 1.6, "Confidentiality of information"); *see also* § 10–615(1) ("A custodian shall deny inspection of a public record or any part of a public record if[,] by law, the public record is privileged or confidential . . ."). In *Harris*, the relevant information was not privileged because it did not fall under the attorney-client privilege, but it was found to be confidential because it was the type of information an attorney is barred from disclosing under MRPC Rule 1.6. The information requested in *Caffrey* was of the type that is normally subject to the attorney-client privilege.

Because § 10–615 is one of the mandatory denial provisions ("A custodian shall . . ."), the *Caffrey* court found that an attorney representing a county could not disclose the information absent a waiver of privilege from his or her client (Montgomery County). The Court found, however, that § 505 of the Montgomery County Charter effectuated such a waiver. Because Montgomery County had waived its right as a client to withhold certain information under the attorney-client privilege, that information was deemed subject to disclosure.

dence or communications with an alarm user to any other person for any purpose not related to this Subtitle or official law enforcement matters and without the express written consent of the alarm user supplying such information, the County employee shall be guilty of a misdemeanor.

The MPIA requires that, "[e]xcept as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." § 10–613(a). Standing alone, these two provisions appear to conflict with one another. "A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." *Montrose Christian Sch. Corp. v. Walsh,* 363 Md. 565, 580, 770 A.2d 111, 120 (2001).

The County argues that § 10–615(1), which requires that a custodian deny inspection of a record if, "by law, the public record is privileged or confidential," saves its ordinance from preemption. According to the County, its ordinance makes the data collected in alarm user applications confidential "by law." Because the custodian is required to deny inspection of confidential information, the County was justified in withholding the information Police Patrol requested.

 To the contrary, the General Assembly never intended to give counties the right to create additional or new non-disclosure exceptions not contemplated within the MPIA by declaring information "confidential" in local laws. § 10–615 reads:

A custodian shall deny inspection of a public record or any part of a public record if:

(1) by law, the public record is privileged or confidential; or

(2) the inspection would be contrary to:

(i) a State statute;

(ii) a federal statute or a regulation that is issued under the statute and has the force of law;

(iii) the rules adopted by the Court of Appeals; or

(iv) an order of a court of record.

The sources of "law" listed in § 10–615(2) apply equally to § 10–615(1). In other words, no public record may be considered confidential or privileged unless a basis for that is found in one of those enumerated sources of law.[5] Local ordinances are not among those sources. Accordingly, a local law or ordinance may not make a particular public record or piece of public information "privileged or confidential" for the purposes of the MPIA unless one of the sources of law listed in § 10–615(2) does so or authorizes the adoption of such.

This analysis is consistent with our previous decisions construing and applying the MPIA, where we confirmed that constitutional, statutory, and rule-based law may make records confidential or privileged, but where no such authority was found to exist for that accomplishment by local laws and ordinances. *See Office of the Governor v. Washington Post Co.*, 360 Md. 520, 759 A.2d 249 (2000) (executive privilege, which is rooted in the concept of separation of powers inherent in the Maryland Constitution, may sometimes make certain information confidential for the purposes of the MPIA); *Baltimore Sun Co. v. Mayor & City Council of Baltimore*, 359 Md. 653, 755 A.2d 1130 (2000) (the right to a fair trial, found in Maryland and U.S. Constitutions, can justify the closing of a courtroom and the sealing of a trial record from the public in limited cases); *Office of the Attorney General v. Gallagher*, 359 Md. 341, 753 A.2d 1036 (2000) (Md. Rule 2–402(c) makes attorney work product privileged for MPIA purposes); *Office of the State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 737 A.2d 592 (1999) (Md. Rule 4–642 makes grand jury investigation materials confidential for MPIA purposes); *Harris v. Baltimore Sun Co.*, 330 Md. 595, 625 A.2d 941 (1993) (the Maryland Rules of Professional Conduct for Lawyers, adopted by the Court of Appeals, *see* Maryland Rule 16–812, can make information confidential for MPIA purposes).

---

**5.** It should go without saying that, although not enumerated specifically, the Constitution of Maryland, Maryland Declaration of Rights, and Constitution of the United States of America are potential sources of law that could create exemptions to the MPIA. *See Office of the Governor v. Washington Post Co.*, 360 Md. 520, 759 A.2d 249 (2000).

## III.

 The County presents us with two alternative grounds for affirming the Circuit Court's judgment: an imagined MPIA "Personal Information Exception" and the 2002 amendment to the MPIA entitled "Public Security Documents" (see slip op. at 1, n. 2, and 5). An appellate court may affirm the Circuit Court's decision on a ground adequately supported by the record even though the ground was not relied upon by the trial court, and it is not uncommon for this Court to exercise its discretion and affirm a trial court on such alternative grounds. *See, e.g., Dorsey v. Bethel A.M.E. Church,* 375 Md. 59, 68–69, 825 A.2d 388, 393 (2003). This case, however, is not amenable to such treatment in its current posture.

The only issue presented in the Circuit Court was whether the County's justification, under its ordinance, for denying Police Patrol's request was authorized as a matter of law. We hold that it was not. It is not consistent logically to say that the County's justification for denying the request was sufficient on grounds other than those supplied by the County. We cannot say what the County would have done had it known that its initial and, until appeal, sole justification was legally insufficient. Furthermore, at least one of the alternative grounds presented by the County requires it to exercise discretion and consider factors that we cannot say, on the record before us, necessarily were considered previously. We may not exercise the County's discretion in its place, and so the matter must be remanded for the County to make a new determination.[6]

### A.

 As we previously expressed, and as we reiterate today, there are no discrete "public interest," "personal information,"

---

6. Police Patrol argues that the second alternative grounds presented by the County, the 2002 "Public Security Documents" amendment to the MPIA, was not preserved properly for appellate review consideration. For reasons we shall explain, we need not decide whether the point was preserved.

or "unwarranted invasion of privacy" exceptions to the MPIA. *See Washington Post,* 360 Md. at 554, 759 A.2d at 268 ("the Maryland Public Information Act does not contain a general 'catchall' public interest exemption. Instead, for a record to be exempt from disclosure because of the 'public interest,' it must fall within one of the specific categories set forth in § 10–618."); *Kirwan v. The Diamondback,* 352 Md. 74, 88–89, 721 A.2d 196, 203 (1998) ("the Maryland Public Information Act does not contain an exemption for particular cases whenever the disclosure of a record might cause an 'unwarranted invasion of privacy.'").

 The apparent sources of the County's confusion on this point are §§ 10–612(b) and 10–626. Section 10–612 gives the public a broad right to access and inspect public records:

(a) General right to information.—All persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees.

(b) General construction.—To carry out the right set forth in subsection (a) of this section, *unless an unwarranted invasion of the privacy of a person in interest would result,* [the MPIA] shall be construed in favor of permitting inspection of a public record, with the least cost and least delay to the person or governmental unit that requests the inspection.

§ 10–612 (emphasis added). The County claims that the highlighted language creates a general catchall power on the part of custodians to deny requests that would create an "unwarranted invasion of the privacy of a person in interest." In fact, the highlighted language is part of an internal statutory construction provision having no independent effect. The language directs that the MPIA be construed more narrowly, and its exemptions more broadly, when privacy issues are at stake. Nonetheless, a records custodian still must find some basis in law for the denial of a request before choosing to withhold public records.

■ Like § 10–612, § 10–626 addresses the privacy concerns inherent in a statute like the MPIA, but stops short of creating any new exemptions:

(a) Liability.—A person, including an officer or employee of a governmental unit, is liable to an individual for actual damages that the court considers appropriate if the court finds by clear and convincing evidence that:

(1) (i) the person willfully and knowingly permits inspection or use of a public record *in violation of [the MPIA]*; and

(ii) the public record names or, with reasonable certainty, otherwise identifies the individual by an identifying factor . . .

(2) the person willfully and knowingly obtains, discloses, or uses personal information *in violation of § 10–616(p) of [the MPIA]*.

§ 10–626 (emphasis added). While § 10–626 creates a civil penalty for the improper disclosure of personal information, it does not create an exemption for personal information. Instead, as the highlighted language indicates, liability under § 10–626 is contingent on a finding of a violation of a separate provision of the MPIA.

### B.

■ On 9 April 2002, the Maryland General Assembly enacted an amendment to the MPIA entitled "Public Security Documents." 2002 Md. Laws, Chap. 3. The amendment was designated an emergency measure and took effect immediately upon enactment. It added a new section (j) to § 10–618, recognizing a new permissive denial basis:

(a) In general.—Unless otherwise provided by law, if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest, the custodian may deny inspection by the applicant of that part, as provided in this section.

\*　　\*　　\*

(j) Denial of inspection.—

(1) Subject to paragraphs (2), (3), and (4) of this subsection, a custodian may deny inspection of:

(i) response procedures or plans prepared to prevent or respond to emergency situations, the disclosure of which would reveal vulnerability assessments, specific tactics, specific emergency procedures, or specific security procedures;

(ii) 1. building plans, blueprints, schematic drawings, diagrams, operational manuals, or other records of airports and other mass transit facilities, bridges, tunnels, emergency response facilities or structures, buildings where hazardous materials are stored, arenas, stadiums, waste and water systems, and any other building, structure, or facility, the disclosure of which would reveal the building's, structure's or facility's internal layout, specific location, life, safety, and support systems, structural elements, surveillance techniques, alarm or security systems or technologies, operational and transportation plans or protocols, or personnel deployments; or

2. records of any other building, structure, or facility, the disclosure of which would reveal the building's, structure's, or facility's life, safety, and support systems, surveillance techniques, alarm or security systems or technologies, operational and evacuation plans or protocols, or personnel deployments; or

(iii) records prepared to prevent or respond to emergency situations identifying or describing the name, location, pharmaceutical cache, contents, capacity, equipment, physical features, or capabilities of individual medical facilities, storage facilities, or laboratories.

(2) The custodian may deny inspection of a part of a public record under paragraph (1) of this subsection only to the extent that the inspection would:

(i) jeopardize the security of any building, structure, or facility;

(ii) facilitate the planning of a terrorist attack; or

(iii) endanger the life or physical safety of an individual.

(3) (i) Subject to subparagraph (ii) of this paragraph, a custodian may not deny inspection of a public record under paragraph (1) or (2) of this subsection that relates to a building, structure, or facility that has been subjected to a catastrophic event, including a fire, explosion, or natural disaster.

(ii) This paragraph does not apply to the records of any building, structure, or facility owned or operated by the State or any of its political subdivisions.

(4) (i) Subject to paragraphs (1) and (2) of this subsection and subparagraph (ii) of this paragraph, a custodian may not deny inspection of a public record that relates to an inspection of or issuance of a citation concerning a building, structure, or facility by an agency of the State or any political subdivision.

(ii) This paragraph does not apply to the records of any building, structure, or facility owned or operated by the State or any of its political subdivisions.

Section 10–618(j)(1)(ii)(2) authorizes a records custodian to deny a request that would disclose information about "alarm or security systems or technologies" for private buildings if the custodian believes that disclosure would be contrary to the public interest.

The amendment was enacted after Police Patrol filed its complaint in the Circuit Court, but before that court rendered its judgment. As noted previously, the amendment was not addressed by the Circuit Court or by any of the parties before the Circuit Court. This raises the question of whether the County or the Circuit Court should have considered the amendment in rendering their respective decisions, and whether the amendment should be considered now.

██ "[A] statute, though applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, when applied so as to determine the legal significance of acts or events that occurred prior to its effec-

tive date, applied retroactively." *Allstate Ins. Co. v. Kim,* 376 Md. 276, 289–90, 829 A.2d 611, 618–19 (2003). Police Patrol's initial request, however, is now stale (that is, the information it sought in August of 2001 likely has changed over the passage of time). Police Patrol conceded at oral argument before us that, were it to prevail on appeal on the sole issue of law decided by the Circuit Court, its request for information must be considered as seeking that information as it is recorded presently. Police Patrol does not now seek the names, addresses and telephone numbers of every registered alarm user in the County as they were recorded in August 2001. Rather, Police Patrol seeks the current information contained in County records. We, and ultimately the County, therefore must review the request according to the current provisions of the MPIA, including the 2002 amendment.

Section 10–618(j) necessarily must be taken into account when making a determination whether to grant Police Patrol's request.

> When an issue is raised regarding whether a statute may be given retroactive effect, we engage in a two-part analysis. First, we must determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted.... If we conclude that the Legislature did intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition.... [T]hat analysis must take into account both Federal and Maryland provisions, as to which the standards differ.

*Kim,* 376 Md. at 289–90, 829 A.2d at 618–19 (emphasis removed).

The law was enacted as an emergency measure. A joint task force appointed by the Governor, Speaker of the House, and President of the Senate submitted the amendment as part of a package of bills in response to the terrorist attacks on the United States on 11 September 2001. *See* Ryan Wilson, *Department of Legislative Services Fiscal Note—Revised,* at 3 (25 March 2002) (located in Senate Education, Health, and

Environmental Affairs Committee bill file for 2002 Senate Bill 240). The amendment was intended immediately to authorize the potential non-disclosure of records listed in § 10–618(j) to the public before more lives or property could be put at risk. The goal was to protect information.[7] Thus, the amendment, in order to effectuate its objective, applies to all covered information that already has not been disclosed to the public, including requests that were pending and denials appealed as of the time of its enactment.

This approach is consistent with the reasoning in *Southwest Ctr. for Biological Diversity v. United States Dep't of Agric.,* 314 F.3d 1060 (9th Cir.2002). In that case, the United States Court of Appeals for the Ninth Circuit, interpreting the Federal Freedom of Information Act (FOIA),[8] found that the U.S. District Court for the District of Arizona was correct in applying an exemption that had been enacted after the plaintiff's request for information was lodged. In March 1998, the Southwest Center for Biological Diversity ("the Center") filed a FOIA request with the U.S. Forest Service regarding data the Forest Service had gathered on the Northern Goshawk, a rare western bird of prey. 314 F.3d at 1061. When the Center did not receive a response, it brought an action in federal district court to compel the Forest Service to release the information. *Id.* While the action was pending in the

---

7. In testimony in support of the bill, Danna Kauffman of the Governor's Legislative Office declared that "it has become clear that there are certain records in the possession of State and local governments that, if released, could pose a threat to the public." Danna L. Kauffman, *State Government—Access to Public Records—Public Security Documents ( [2002] Senate Bill 240),* at 1 (28 February 2002) (located in Senate Education, Health, and Environmental Affairs Committee bill file for 2002 Senate Bill 240).

8. The purpose of the Maryland Public Information Act is virtually identical to that of the FOIA, 5 U.S.C. § 552 (2003): to provide the public the right to inspect the records of the State government or of a political subdivision. *Fioretti v. Maryland State Bd. of Dental Exam'rs,* 351 Md. 66, 76, 716 A.2d 258, 263 (1998). Moreover, the historical development of portions of the MPIA parallel those of its federal counterpart. Under these circumstances, the interpretation of the FOIA by federal courts is persuasive. *Id.*

district court, Congress enacted the 1998 Parks Act. In relevant part, the Parks Act provided that "information concerning the nature and specific location of a National Park System resource which is endangered, threatened, [or] rare ... within units of the National Park System ... may be withheld from the public in response to a request under [FOIA]...." *Id.* (quoting 1998 Parks Act § 207, 16 U.S.C. § 5937). The Forest Service determined that the information requested fell within the 1998 Parks Act, precluding release of all data that would reveal the location of goshawk nest sites. The district court held that the Parks Act applied, and entered judgment in favor of the Forest Service. *Id.*

The Ninth Circuit reasoned that "application of the exemption furthers Congress's intent to protect information regarding threatened or rare resources of the National Parks." 314 F.3d at 1062. Likewise, in the present case, application of § 10–618(j) furthers the intent of the Maryland General Assembly to offer possible protection for information regarding the vulnerabilities and security systems of potential terrorist targets.

The Ninth Circuit also found that application of the FOIA exemption would have no impermissible retroactive effect. *Id.* The U.S. Constitution, like the Maryland Declaration of Rights, restricts the enactment of laws with impermissible retroactive effects. U.S. Const., Art. 1, § 9 ("No Bill of Attainder or *ex post facto* Law shall be passed [by Congress]."); U.S. Const. Art 1, § 10 ("No State shall ... pass any Bill of Attainder, *ex post facto* Law, or Law impairing the Obligation of Contracts"); Md. Declaration of Rights Art. 17 ("That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required.").

■ Application of the 2002 permissive exemption to the MPIA has no impermissible retroactive effect in the present case. We have explained that the constitutional limitations imposed on retrospective laws collectively mean that "a statute

will not be given [retrospective] effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws." *Kim,* 376 Md. at 289, 829 A.2d at 618. Police Patrol had no vested rights in the information merely as a result of submitting its request. Nor had Police Patrol taken a prejudicial position in reliance on receiving the information. Police Patrol was not denied its right to sue in court to gain the information. The 2002 amendment was not an *ex post facto* law. We have defined an *ex post facto* law as one "which punishes that which was innocent when done; or adds to the punishment of that which was criminal; or increases the malignity of a crime." *Spielman v. State,* 298 Md. 602, 611, 471 A.2d 730, 735 (1984) quoting *Beard v. State,* 74 Md. 130, 132, 21 A. 700, 701 (1891). Police Patrol was not penalized in this case. On remand, the County should take § 10–618(j) into account when considering Police Patrol's still pending request.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO REMAND THE MATTER TO PRINCE GEORGE'S COUNTY FOR RECONSIDERATION OF POLICE PATROL'S REQUEST CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*