RANDOLPH, PRESIDING JUSTICE,
FOR THE COURT:
¶1. Adhering to our rule of law, we, the judiciary, should honor and enforce legislatively created exemptions to statutes. “[W]e must presume that the [Mississippi Legislature] meant what it said and said what it meant... ."[1] It would be “ludicrous for this Court to blindly follow” the Mississippi Public Records Act of 1983 (MPRA) as it existed in 2014 when the documents at issue were requested and act as though we did not know the law, as adopted by the Legislature in 2016 and readopted in 2017.[2] See Beatty v. State, 627 *931 So.2d 355, 358 (Miss. 1993). See also Cellular S., Inc. v. BellSouth Telecomm., LLC, No. 2016-CA-00034-SCT, 214 So.3d 208, 215, 2017 WL 841132, at *6 (Miss. Mar. 2, 2017) (“As a result, absent an applicable saving clause, a final judgment, or a loss to BellSouth of a vested right, we must apply the Public Records Act to the instant case as though it has always read as it reads today.”). Accordingly, we vacate the trial court’s judgment and render a decision in favor of the Mississippi Department of Corrections (MDOC).
BACKGROUND
¶2. MDOC appeals from the Hinds County Chancery Court’s order granting the Roderick & Solange MacArthur Justice Center’s (Justice Center’s) complaint for declaratory judgment, deeming MDOC in violation of the Mississippi Public Records Act (MPRA) and requiring MDOC to produce records sought by the Justice Center. In November 2014, the Justice Center made a request under the MPRA for records pertaining to MDOC’s process and protocol for lethal injections, as well as MDOC’s acquisition of chemicals it intended or considered for use in lethal-injection executions. MDOC responded to the Justice Center’s 2014 request, furnishing documents, some of which were redacted.
¶3. On December 30, 2014, the Justice Center filed its complaint, seeking an order requiring MDOC to respond completely, without redaction, to the November 2014 request. On January 29, 2015, MDOC filed an answer and counterclaim. MDOC requested that the court declare the name(s) and other identifying information concerning the name(s) of the entities that supply the lethal-injection drugs as well as the identities of members of the execution team to be confidential, privileged, or otherwise exempt from the requirements of the MPRA,
¶4. The chancery court heard the case on March 2, 2015. The parties appeared, but neither party offered evidence to support its claims and/or defenses. In its order. and opinion,, the chancery court concluded that the redacted information neither fell within any of the statutory exemptions provided by the MPRA, nor was it sufficiently sensitive to be sealed and withheld from the public. It ordered the information be disclosed to the Justice Center.
¶5. During the pendency of this appeal, the Mississippi Legislature enacted into law in 2016 Mississippi Code Section 99-19-51(2) (Supp. 2016) and in 2017 Section 99-19-51(6)(c), (2017 Miss. Laws H.B. 638)[3], both of which exempt public bodies from disclosing the “identities of all' members of the execution team, a supplier of lethal injection chemicals, and the identities of those witnesses listed in Section 99-19-55(2) who attend as members of the victim’s or the condemned person’s immediate family ... under the provisions of the Mississippi Public Records Act of 1983.” Miss. Code Ann. § 99-19-51(6). The parties were ordered to supplement their briefs as to what effect a change in the law had on the pending case.[4]
*932 ANALYSIS
¶6. The Legislature of this state, as the principal exponent of the public policy of this state, has declared that the information sought is to be exempted. During the pendency of this matter on appeal, the Legislature has amended the statute twice. First, Senate Bill 2237 was passed and signed into law, See Miss. Code Ann. § 99-19-51(2), followed by House Bill 688 in 2017. See Miss. Code Ann. § 99-19-51(6)(c), 2017 Miss. Laws H.B. 638. The legislation specifically expanded the exemptions of the MPRA to include information previously redacted and/or not disclosed by MDOC.[5]
¶7. Succinctly stated, our review is limited to the actual controversy remaining— what documents, if any, MDOC is required tó disclose pursuant to our law.[6] See Miss. Ass’n of Educators v. Trustees of Jackson Mun. Separate Sch. Dist., 510 So.2d 123, 124 (Miss. 1987). As early as on May 3, 2016, there was no obligation for MDOC to disclose documents which would reveal the information first exempted by Section 99-19-51(2) and then by Section 99-19-51(6)(c).[7]
¶8. Section 99-19-51(6)(e) addresses exemptions from disclosures. The Legislature has plenary authority to amend the law; See Musgrove v. Vicksburg & N.R. Co., 50 Miss. 677, 682-83 (1874). The adoption date of the amendment established the effective date for disclosure. Disclosure duties before passage of Section 99-19—51(6)(c) are of no consequence. Thus, retroactivity is not at issue. It follows that Section 99-19-51 (6) (c) applies prospectively to disclosure of information not deemed as exempt after passage.
[I]t is not for the courts to decide whether a law is needed arid advisable in the general government of the people. That is solely a matter for the wisdom of the Legislature. But, it is our duty to construe the law and apply it to the case presented....
City of Belmont v. Miss. State Tax Comm’n, 860 So.2d 289, 307 (Miss. 2003) (quoting Moore v. Grillis, 205 Miss. 865, 888, 39 So.2d 505, 509 (1949)).
¶9. This Court held in 1874 that:
if there has been a change or alteration, or repeal of the law applicable to the rights of the parties, after rendition of the original judgment, and pending the appeal, the case must be heard and decided in the appellate court, according to the then existing law.
Musgrove, 50 Miss. at 682. In Crow v. Cartledge, 99 Miss. 281, 54 So. 947 (1911), we addressed the necessity of “finality of judgment” with regard to new law:
The effect of a repealing statute of this character is to abrogate the repealed statute as completely as if it had never been passed. It is considered as a law which never existed, except for suits *933 which were commenced and concluded while the repealed law was in force.
Crow, 54 So. at 948 (emphasis added). Therefore, it is well-settled:
by the decisions of our Court, and in most every other jurisdiction, that when proceedings are in process under a statute and have not been completed, and have not reached the stage of final judgment, and a new act is passed, modifying the statute under which the proceedings were begun, the new statute becomes integrated into and a part of the old statute as fully as if written therein from the very time the old statute was enacted....
Oliphant v. The Carthage Bank, 224 Miss. 386, 410, 80 So.2d 63, 72 (1955).
¶10. When the Legislature chooses to amend or modify any law related to a pending action, this Court applies the Legislature’s most recent pronouncement. USPCI of Mississippi, Inc. v. State ex rel. McGowan, 688 So.2d 783, 787 (Miss. 1997). We treat the new pronouncement as if it always had been in the Code, unless the Legislature chooses to include a saving clause:[8]
An amended act is ordinarily construed as if the original statute had been repealed, and as far as any action after the adoption of the amendment is concerned, as if the statute had been originally enacted in its amended form. Beatty v. State, 627 So.2d 355, 357 (Miss. 1993); Stone v. Independent Linen Service Co., 212 Miss. 580, 55 So.2d 165 (1951); McCullen v. Sinclair Refining Co., 207 Miss. 71, 41 So.2d 382 (1949). This Court in Stone reiterated the law set forth in Deposit Guaranty Bank & Trust Co. v. Williams, 193 Miss. 432, 9 So.2d 638 (1942):
Many decisions in this state have affirmed the rule, which generally prevails, ... that a statute modifying previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the ... modifying statute contains a saving clause.
Stone, 212 Miss. 580, 586-8, 55 So.2d 165, 168 (quoting Deposit Guaranty, 193 Miss. 432, 438, 9 So.2d 638, 639) [Citations omitted.].
USPCI, 688 So.2d at 786-87 (emphasis added).
The result of this rule is that every right or remedy created solely by the ... modified statute disappears or falls with the ... modified statute, unless carried to final judgment before the ... modification, — save that no such ... modification shall be permitted to impair the obligation of a contract or to abrogate a vested right.[9]
Deposit Guar., 9 So.2d at 639. There is no basis to depart from these well-reasoned decisions. Such holdings are not unique to this state, for the same principle is followed by other states and the federal courts in public-records-request cases.
*934 ¶11. In State ex. rel. Pittman v. Ladner, 512 So.2d 1271 (Miss. 1987), when considering the effect of an amended statute on existing cases, we held that “[b]ecause the statute has been changed, and because this Court is obliged to act consistent with a rational reading of the legislative declaration, we have as a matter of reason^ precedent arid choice determined that we should stay our hand from enforcement of that which has been repealed.” Ladner, 512 So.2d at 1276-77. See also Bell v. Mitchell, 592 So.2d 528, 532 (Miss. 1991) (“When cases are in the bosom of this Court and there is involved a statute that is modified prior to a final decision of this Court, we take that modification into consideration.”).
¶12. This principle has been reaffirmed numerous times by this Court. In USPCI, we noted that the Court previously had held in Fordice v. Thomas, 649 So.2d 835 (Miss. 1995), that the Governor’s Office was an agency within the meaning of the Administrative Procedures Law (APL), USPCI, 688 So.2d at 785. See also Miss. Code Ann. § 25-43-5 (1972). In light of the Thomas decision, the Governor took steps to comply with the requirements of the APL. USPCI, 688 So.2d at 785. However, a group of concerned citizens filed suit, alleging the Governor’s steps were inadequate. Id. The trial judge held that the Governor had violated the APL, and the Governor appealed. Id. While the appeal was pending, the Legislature amended Mississippi Code Section 25-43-5 specifically to exclude the. Governor from the requirements of the APL. Id. at 786, Based on the precedent cited above, the USPCI Court held that the Governor did not have to comply with the requirements of the APL. Id. at 787.
¶13. In City of Belmont, we held that the Legislature’s passing of a new law resulted in a pending suit being abated. City of Belmont, 860 So.2d at 308, Citing a long line of. cases, including Ladner, Stone, and USPCI, the Court found that “under Mississippi case law, [the new law] should be given the full effect of its clear purpose .” Id. at 301. In City of Starkville v. 4-County Electric Power Association, 909 So.2d 1094, 1115 (Miss. 2005), we held that a statutory amendment was applicable to the pending legislation,
Today, there is not only clear legislative intent that H.B. 997 should indeed apply to this instant litigation, there is also 'clear precedent indicating that, if the Legislature chooses to amend a statute while a case is still ’ pending, we will apply that amendment as if it had been part of the statute all along.
City of Starkville, 909 So.2d at 1111.
¶14. The Justice Center asks this Court to ignore Section 99-19-51 and to restrict our analysis to Sections 25-61-1 to 25-61-19, an invitation accepted by the dissent.[10] It would be a breach of our duty to confine our analysis to only the MPRA. We cannot don blinders and pretend Section 99-19-51 does not exist. This Court has not followed that path in the past, nor should it today. *935 While the Justice Center’s request was filed pursuant to the MPRA, Section 99-19-51 specifically amended MDOC’s duty to disclose documents requested under the MPRA.
¶15. This Court previously has addressed that subissue as well, i.e., one statute amending another. In Beatty, state authorities seized sixteen slot machines. Beatty, 627 So.2d at 356. At the time of the seizure, ownership of gaming devices was barred by Mississippi Code Section 97-33-7. Id. at 356. Beatty moved for return of the seized slot machines, arguing the machines were not being used for illegal gambling. Id. The trial court denied the motion, and Beatty appealed. Id. While the case was on appeal, the. Legislature enacted a new statute, Mississippi Code Section 27-27-12, which provided an exception to the prohibition against ownership of gaming devices for antique slot machines. Id. The Beatty Court noted that there was no saving clause in either Section 97-33-7, which also was amended, or Section 27-27-12, and that the case had not proceeded to final judgment. Id. at 357. The Beatty Court held that “[t]he application of Section 27-27-12 and the resultant amendment to Section 97-33-7 is not a charitable raising of an issue not raised but is a necessary application of existing law to which the appellant is entitled. We simply cannot apply the law as it was and is not anymore.” Id. at 358.
¶16. In this case, the Legislature specifically referenced MPRA exemptions in its amendment to Section 99-19-51. Any argument that the Legislature’s amendment is not applicable to this case is contrary to our existing law.
¶17. Despite the adoption of new law by the Legislature by the enactment of Section 99-19-51 and the clear pronouncements of law that the amended statute must be treated as if it were always a part of the old statute, the Justice Center alternatively argues that it had a “right” to obtain documents via a public, records request (which is purely, a creation of statute), equating to a contract or vested right. Ladner dispels that notion. In Ladner, this Court defined a vested right as “[1] a contract right, [2] a property right, or [3] a right arising from a' transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute,” Ladner, 512 So.2d at 1275-76.
A. Property Right
¶18. The Justice Center makes no claim of a vested property right, for, .indeed, it has none. Thus, we can dispense with the second right addressed by Ladner.
B. Contract Right
¶19. In determining whether the Justice Center had a contractual right, we look for the essential elements required to form a contract. They are “(l).two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.” Caplin Enters., Inc. v. Arrington, 145 So.3d 608, 613 (Miss. 2014) (emphasis added). There is no evidence in this record of “an agreement that is sufficiently -definite” or evinces “mutual assent,” or a meeting of the minds, as between the Justice Center and MDOC, that, for accepting whatever sum was calculated for reimbursement, MDÓC agreed to disclose everything the Justice Center requested. The record reveals just the opposite. The Justice Center’s argument that it somehow obtained a “vested right” to the requested documents, merely because it tendered *936 payment to MDOC for some records, lacks reason or authority, and thus fails.[11]
¶20. Additionally, no contract has been submitted to this or the trial court, nor was the trial action brought for a breach of contract. The Justice Center never obtained a contract right in any records that MDOC refused to provide — those documents for which it claimed privilege, confidentiality, or subject to an exemption or exception. Such argument is without a basis in fact and is implausible. Therefore, there is no contract right as created by Ladner.
C. Quasi-Contract Right
¶21. Ladner finally recognizes a quasi-contract “right” “which has become perfected to the degree that it is not dependent on the continued existence of the statute.” Ladner, 512 So.2d at 1276. See also Musgrove, 50 Miss. at 683 (“We accept the doctrine of the law to be, that the repeal of a statute necessarily terminates all proceedings under it, unless rights have accrued which can not be divested.”). In Musgrove, we held that “a right to a particular remedy is not a vested right.” Musgrove, 50 Miss. at 684. In Ladner, we specifically held-that the vested right must have been “[in] being as a right notwithstanding the statute’s nonbeing.” Ladner, 512 So. 2d 1276. The Justice Center’s claim to the documents is wholly dependent upon our statutes. Without the MPRA, no right to the documents exists, for no such right existed at common law.
¶22. Finally, the Justice Center contends that it has a private right to the documents, which cannot be divested. Long ago, the United States Supreme Court delineated the distinction between private and public rights in Hodges v. Snyder, 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923). Hodges held that the “private right of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation.” Id. This rule, however, does not apply “to a suit brought for the enforcement of a public right, which, even after it has been established by the judgment of the court, may be annulled by subsequent legislation and should not be thereafter enforced ....” Id. In Deposit Guaranty, this Court held essentially the same: “[although a right conferred solely by statute in the public interest may have accrued before the repeal or modification, it does not follow that the accrued right in such cases is a vested right, in the constitutional sense.” Deposit Guar., 9 So.2d at 640. “By the great weight of authority, the legislature may repeal a [ ] law and no one has any vested right to take advantage of such laws.” Id. (citation omitted).
¶23. The United States Supreme Court more recently has held that there is “no constitutional right to obtain all the information provided by [Freedom of Information Act] FOIA laws.” McBurney v. Young, 569 U.S. 221, 133 S.Ct. 1709, 1718, 185 L.Ed.2d 758 (2013). Similarly, the United States Court of Appeals for the Ninth Circuit, interpreting the Federal Freedom of Information Act (FOIA), held that a district court properly applied an exemption which had been enacted after the plaintiffs requested information. Southwest Ctr. for Biological Diversity v. *937 United States Dep’t of Agric., 314 F.3d 1060 (9th Cir. 2002). The SCBD brought action in federal court to compel the Forest Service to release information previously requested under the FOIA regarding a rare western bird of prey. Id. at 1061. While the action was pending, Congress enacted the 1998 Parks Act, which provided that information on endangered or threatened animal species could be withheld from the public in response to requests under the FOIA. Id. The district court held that the Parks Act applied. Id.
¶24. The Ninth Circuit held:
There is no such impermissible retroactive effect here. The Center contends that application of § 207 “impairs [a] right[ ] [the Center] possessed when [it] acted,” because the Center had a right to the information when it filed its suit (or when it made its earlier request) and it loses that right by application of the new exemption. But the “action” of the Center was merely to request or sue for information; it was not to take a position in reliance upon existing law that would prejudice the Center when that law was changed.... Moreover, as the district court pointed out, application of the exemption furthers Congress’s intent to protect information regarding ■ threatened or rare resources of the National Parks. This case accordingly presents one of the many situations in which courts appropriately apply the law in existence at the time of their decision.
Biological Diversity, 314 F.3d at 1062.
¶25. A number of sister states also have rejected the argument that an individual has a private, vested right in an open-records request, as well as addressing the effect of subsequent legislation. See Deal, 294 Ga. at 184, 751 S.E.2d at 349 (“[W]e conclude that the right of access afforded by the former [Open Records] Act is a public right of the People as a whole. As such, it could not vest in any particular persons, whether' upon ’the making of a request for public records, or upon the filing of an action to enforce the public right. Accordingly, there is no constitutional impediment to the retroactive modification of the Act by subsequent legislation”) (emphasis added); Police Patrol Sec. Sys., Inc. v. Prince George’s Cty., 378 Md. 702, 722, 838 A.2d 1191, 1202 (2003) (“The amendment [of the public records act in the wake of the attacks of September 11, 2001] was intended immediately to authorize the potential nondisclosure of records listed in Section 10 — 618(j) to the public before more lives or property could be put at risk. The goal was to protect information. Thus, the amendment, in order to effectuate its objective, applies to all covered information that already has not been disclosed to the public, including requests that were pending and denials appealed as of the time of its enactment.”) (emphasis added).
¶26. In Campus Communications, Inc. v. Earnhardt, 821 So.2d 388 (Fla. Dist. Ct. App. 2002), the Estate of Dale Earnhardt, who was killed in a racing accident, obtained an ex parte injunction precluding the medical examiner from releasing thirty-three photographs taken during Earnhardt’s autopsy. Earnhardt, 821 So.2d at 392. Subsequently, a newspaper and individual requested the photographs under the Public Records Act. Id. Both requests were denied pursuant to the injunction. Id. After the requests were denied, the Florida Legislature enacted Florida Statute Section 406.135, which declared autopsy photographs to be exempt from the Public Records Act. Id. Pursuant to the passage of the statute, the estate amended its request to include permanent injunctive relief under the state. Id. Campus filed a cross-claim, seeking an order under the Public Records Act to allow inspection and *938 copying of-the photographs. Id. The trial court held that the new statute was constitutional and retroactively applicable to the requests; Id.
¶27; On appeal, Campus claimed that it had a vested right to inspect and copy the autopsy photographs of Earnhardt. Id. The Florida Appeals Court disagreed, holding that it was not a vested right for two reasons: “1) the right to inspect and copy public records is a right subject • to divestment by enactment of statutory exemptions by the Legislature; and 2) the rights provided under the Public Records Act are public rights.” Id. at 398. The Florida Court held that:
the right to inspect and copy public records is a right subject to divestment by legislative enactment. Hence, the right claimed by Campus to view the autopsy photographs is not a “fixed” right and thus it is not a vested right within the context of the constitutional prohibition against retroactive application of legislation. Rather, it is more akin to “an expectation based on an anticipation of the continuance of an existing law” with the “existing law” being the Public Records Act, and the “anticipation” being the maintenance of the current provisions of the Act unchanged by the Legislature’s enactment of exemptions.
Id. at 399. The Florida Court also held that: “To be vested a right must be more than, a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand....” Id. at 398. Similarly, the MPRA establishes a general public right but does not establish any type of private, vested right that can withstand the application of a specific exemption provided by the Legislature.
¶28. Any rights involved in the present suit are public rights shared by all. This is evident by the declaration in the MPRA that “[i]t is the policy of the Legislature that public records must be available for inspection by any person unless otherwise provided by this act....” Miss. Code Ann. § 25-61-1 (emphasis added). It is not a vested right for two reasons: 1) the right to inspect and copy public records is a right subject to divestment by enactment of statutory exemptions by the Legislature; and 2) the rights provided under the MPRA are public rights.
If we were to accept the argument advanced by [the Justice Center] that once a public record is created, a member of the public has a vested right to inspect and copy it, we would have to conclude that a statute that establishes an exception to the [MPRA] may never be applied retroactively. Adoption of such a rule would eliminate the Legislature’s ability to enact remedial legislation to immediately resolve problems caused by public disclosure and to mitigate the sometimes harsh provisions of the [MPRA]. Moreover, adoption of such a rule would require us to ignore decisions of the courts of this state that have given retroactive application to such statutory exemptions....
Id. at 401. Thus, the argument advanced by the Justice Center that the application of the amended law abrogates a vested right likewise should be rejected.
¶29. Application of the exemption to the MPRA has no impermissible retroactive effect in the present case. The Justice Center acquired no vested rights in the information merely as a result of submitting its request. Nor had the Justice Center taken a prejudicial position in reliance on receiving the information. The Justice Center was not denied a right to sue in open court to obtain the information.
*939 CONCLUSION
¶30. While the Legislature established a statutory right of access to public records in the MPRA, it exempted the disclosure of those documents sought in today’s case. This Court chooses to follow the law as set forth by the Legislature. Accordingly, we vacate the trial court’s judgment and render a decision in favor of MDOC.
¶31. VACATED AND RENDERED.
WALLER, C.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.

. Deal v. Coleman, 294 Ga. 170, 172, 751 S.E.2d 337, 341 (2013).

. This statute was amended again by House Bill 638, and this exact language is now found *931 in Section 99-19-51(6)(c). See 2017 Miss. Laws H.B. 638,

. The two versions contain identical language regarding exempting public bodies from disclosure.

. The majority acknowledges consent to an order for supplemental briefing, based on both precedent and courtesy. Such consent to a request for supplemental briefing is not indicative of agreement regarding the necessity of same. That said, supplemental briefing created a fresh '270-day deadline, beginning after the bill had passed. Today’s opinion is being handed down within the 270 days.

. Thus, the question of the legitimacy of the trial court’s order is moot. See Miss. Ass’n of Educators v. Trustees of Jackson Mun. Separate Sch. Dist., 510 So.2d 123, 124 (Miss. 1987).

. As opposed to the dissent’s suggestion otherwise, as indicated in separate places in the dissent. See Dis. Op. at ¶ 46.

. The Justice Center originally took the position that this Court should consider that the 2015 Legislature had the opportunity to change the law in House Bill 1305, but failed to do so. The bill was passed in the House but died in committee in the Senate. The Justice Center averred that the Court should take notice that the failure supported the chancellor’s findings that disclosure of the documents was required because the Legislature did not amend the law, implicitly recognizing the Legislature’s prerogative to change the law.

. In the present case, the Legislature did not include a saving clause. ‘‘Saving clause" has been defined as “[a] statutory provision exempting from coverage something that would otherwise be included. A saving clause is generally used in a repealing act to preserve rights and claims that would otherwise be lost.” Saving Clause, Black’s Law Dictionary 1146 (abr. 9th ed.). If the Legislature amends a statute and purposefully does not include a saving clause, applying the new law to pending cases necessarily will conflict with the outdated version. See Robinson v. Morgan, 214 So.3d 188, 2017 WL 841107, No. 2016-CA-00549 (Miss. Mar. 2, 2017).

. These exceptions are discussed more fully infra.

, On one hand, the dissent opines that "the amendment of Section 99-19-51 clearly does not apply to this suit filed under the ‘Public Records Act[,]” (Dis. Op. at ¶ 49), yet it contrastingly opines that Section 99-19-51 "exempts from disclosure under the ‘public records act’ the identities of certain entities and individuals involved in an execution,” See Dis. Op, at ¶ 44, The former is easily disproved when the language of the statute is read verbatim: "The identities of all members of the execution team, a supplier of lethal injection chemicals, and the identities of those witnesses listed in Section 99-19-55(2)- who attend as members of the victim’s or the condemned person's immediate family shall at all times remain confidential, and the information is exempt from disclosure under the provisions of the Mississippi Public Records Act of 1983." Miss. Code Ann. § 99-19-5l(6)(c) (emphasis added).

. The MPRA requires that "each public body may establish and collect fees reasonably calculated to reimburse it for ... the actual cost of searching, reviewing and/or duplicating and, if applicable, mailing copies of public records.... Such fees shall be collected by the public body in advance of complying with the request.” Miss. Code Ann. § 25-61-7 (Rev. 2010).