STONE *v.* INDEPENDENT LINEN SERVICE CO.

Division A. Nov. 19, 1951.

No. 38079. (55 So. (2d) 165).

J. H. Sumrall, for appellant.

W. G. Boone and W. D. Conn, Jr., for appellee.

**Kyle, J.**

This is an appeal from a judgment of the Circuit Court of the First Judicial District of Hinds County rendered in favor of the Independent Linen Service Company against A. H. Stone, Chairman of the State Tax Commission, authorizing the recovery of use or compensating taxes paid by the Independent Linen Service Company to the Chairman of the State Tax Commission for the year 1946 and the first half of the year 1947. The appellee denied liability for the tax, but later paid the amount claimed to be due, and then brought suit to recover the amount paid.

The taxes which the commissioner claimed to be due and which were paid by the appellee were taxes alleged to be due under the provisions of Chapter 120, Laws of 1942, Title 40, Division 3 (Compensating Tax), Section 10146 et seq. of the Code of 1942. The taxes alleged to be due accrued prior to the enactment of Chapter 457, Laws of 1948. The 1948 amendment expressly exempted purchases of the kind involved in this suit from use tax liability, and the amending act contained no saving clause. The effective date of the 1948 amendment was April 12, 1948. The taxes were paid on May 8, 1948.

The fact concerning the alleged assessment of the tax and the fixing of appellee's liability therefor were substantially as follows: The Independent Linen Service Company is a domestic corporation engaged in the linen rental business in the City of Jackson. Its parent company is Memphis Linen Service Company, a corporation domiciled in Memphis, Tennessee. A representative of the State Tax Commissioner called on the office of the Independent Linen Service Company at Jackson to produce its invoices and records indicating the amount of merchandise purchased out of the state and brought into the state for use during the period from January 1, 1946 to June 30, 1947. The local office of the linen service company referred the representative of the commissioner to the head office of the company in Memphis as the only place where the records could be found. Mr. H. I. Adcock, Chief of the Special Audit Section, and Mr. W. P. Phillips, one of his regularly employed auditors, called at the office of the parent company in Memphis and there requested and were allowed to examine what purported to be all invoices showing purchases of materials outside the State of Mississippi which had been brought into Mississippi for use in connection with its local business. And after a list of the invoices had been made and the information contained therein properly classified for the purpose of determining the tax liability, the list was submitted to a representative of the company in whose charge the invoices and records were found, and the list was checked by a representative of the company for the purpose of determining the correctness thereof. After making certain adjustments in the work sheets, the field auditors of the commissioner determined the total amount of the purchases made by the company for its business in Mississippi for the period from January 1, 1946 to June 30, 1947, and the total amount of the use or compensating taxes due on account of such purchases. The field representative then prepared on forms prescribed for use by the taxpayer two copies of returns to be made

by the taxpayer showing the tax liability, one for the 1946 tax liability and the other for the 1947 tax liability. These forms were delivered to the company's representative to be signed by the taxpayer and sent to the commissioner with remittances to cover the amounts of taxes shown to be due. The forms of returns thus made out were dated July 31, 1947.

The following day the field representatives of the commissioner had a conference with the representative of the linen service company and Mr. W. G. Boone, the company's Memphis attorney, concerning the proposed assessment. Mr. Boone requested additional time to study the matter and asked that he be granted a further conference with the commissioner's representatives in Jackson at a later date. It was then agreed that such conference should be held on August 6. Mr. Boone came to Jackson on that date and conferred with Mr. Adcock and Mr. V. B. Wheeless, assistant chief of the Sales and Use Tax Division. The manager of the Jackson office of the linen service company was also present at this conference. No agreement was reached at the conference. The linen service company had made proper returns on their gross receipts from rental services, and had paid the two percent tax imposed thereon under the provisions of the sales tax law; and the company's attorney and office manager were unwilling to concede that the company was legally liable for the use or compensating tax which the commissioner's representatives proposed to assess. The representatives of the commissioner maintained that the company was liable for the tax and in the amount shown in the form return which they had prepared. After several letters had passed between the parties with reference to the proposed assessment, Mr. Boone made another trip to Jackson on December 12, 1947, for the purpose of conferring with the representatives of the commissioner concerning the demand which was being made upon the company for the additional tax.

During the month of January, 1948, Mr. Wheeless prepared for the Ways and Means Committee of the House of Representatives certain amendments to the use tax law which were later incorporated in a bill as amendments to Chapter 120, Laws of 1942. Under one of these amendments it was expressly provided that property purchased for sale, lease or rent, or the processing thereof for sale, lease, or rent, in the regular course of business, should not be included in the term "use", "storage" or "consumption", as defined in the above mentioned act.

After the amendatory act had been passed the commissioner renewed his demand for payment of the tax alleged to be due for the years 1946 and 1947, and the appellee paid the tax to forestall the taking of warrant action by the commissioner. Mr. Wheeless, testifying on behalf of the commissioner, stated that the attorneys for the linen service company had taken the position all along that if the commissioner insisted that the tax be paid it would be paid without warrant action, and it was Mr. Wheeless' understanding that suit would then be brought to recover the tax.

It is admitted in the briefs filed on this appeal that by the enactment of Chapter 457, Laws of 1948, the Legislature exempted from the use or compensating tax imposed by Chapter 120, Laws of 1942, property of the kind and character sought to be included in the assessment involved in this litigation; and, as stated above, there was no saving clause in the amendatory act.

In discussing the effect of a repealing statute or a statute modifying a previous statute on rights or remedies created solely by the repealed or modified statute, this Court, in the case of Deposit Guaranty Bank and Trust Company v. Williams, 193 Miss. 432, 9 So. (2d) 638, 639, said:

"Many decisions in this state have affirmed the rule, which generally prevails, that ██ █ the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a

statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause. Crow v. Cartledge, 99 Miss. 281, 54 So. 947, Ann. Cas. 1913E, 470, and Musgrove v. Vicksburg & N. Railroad Co., 50 Miss. 677, are among the number of such cases in this state.

"The result of this rule is that ██ every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification,—save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right. Bradstreet Co. v. City of Jackson, 81 Miss. 233, 236, 32 So. 999."

In the case that we now have before us the question that we are called upon to decide is whether or not the commissioner had taken such action prior to the effective date of the 1948 amendatory act as to create a vested right in the commissioner to the payment of the tax which is sought to be recovered in this suit. Had the requirements of the statute been complied with in such manner as to show a valid assessment of the tax, and had the tax which the commissioner claimed to be due become a lien against the appellee's property prior to the effective date of the amendatory act? We think both of these questions must be answered in the negative. We think that the testimony taken in the lower court shows that no legal assessment of the tax had been made by the commissioner and that no lien had been created against the property of the taxpayer prior to the effective date of the amendatory act.

Section 10156, Code of 1942, provides that:

"If the records relating to transactions subject to tax herein are not maintained and preserved as required, the commissioner may make additional return and assessment from the best information available. He shall give

notice, by registered mail, of such returns and assessments to the person liable for the tax, or required to collect the tax, and such returns and assessments shall be prima facie correct for the purpose of this act, and the amount of the tax shown to be due thereby shall be a lien against all of the property of the taxpayer until discharged by payment, * * *

"If no return is made by the person liable for the tax or required to collect the tax, the commissioner shall give written notice, by registered mail, to such person notifying him to make a proper return within ten days from the date of the notice, and if the person so notified shall fail or refuse to make such return as he may be required to make in such notice, then a return shall be made by the commissioner from the best information available, and such return shall be prima facie correct for the purposes of this act, and the amount of tax shown to be due thereby shall be a lien against all of the property of the person to whom the notice has been given from the date the amount thereof is determined to be due until discharged by payment."

It is admitted that no return was ever made by the taxpayer upon which an assessment of use or compensating tax could be based. It is also admitted that no notice was given by the commissioner to the taxpayer by registered mail requiring the taxpayer to make a proper return within ten days from the date of the notice. Proof of the fact that the commissioner's field representative on July 31, 1947, filled out blank forms of returns to be executed by the taxpayer and requested the appellee to execute the same and send them to the commissioner, with a check to cover the amount of the tax shown to be due, was not proof of an assessment of the tax by the commissioner, but only proof of a proposed assessment. The form returns were never executed by the taxpayer or signed by the commissioner, or a representative of the commissioner, as returns made by the commissioner for the taxpayer. What was done did not

amount to an assessment of the tax, and the parties so understood the matter at the time. In letters written by Mr. C. R. Gartin, Chief of the Sales and Use Tax Division, to the appellee's attorney in November and December, 1947, when Mr. Boone was arranging for a second conference with the commissioner's representative in Jackson, the matter was still referred to as ''the proposed use tax assessment'' of the linen service company.

██ An assessment of a tax in a case of this kind can have the effect of a judgment only in a case where the requirements of the statute have been followed. ██ And the record in this case fails to show that the requirements of the statute were followed in the making of a return for the taxpayer or in the assessment of the tax alleged to be due and owing by the taxpayer.

The appellant cites, in support of his contention that the alleged assessment made by the commissioner should have been accepted by the court as prima facie correct, the case of Viator v. State Tax Commission, 193 Miss. 266, 5 So. (2d) 487, in which the Court held that where an additional sales tax assessment made by the Chairman of the State Tax Commission disclosed the additional assessment and the grounds for making it, the assessment became ''prima facie correct.'' But in the Viator case the opinion shows that the commissioner, in making the assessment, complied with the requirements of the statute, and did everything that was necessary to be done to give the commissioner jurisdiction to enter a judgment which would be a lien on the property of the taxpayer. Such is not the case here. The commissioner did not make a return and an assessment of the tax, as he might have done, from the best information available, and give notice thereof to the taxpayer by registered mail, nor did the commissioner give written notice by registered mail to the taxpayer notifying him to make a proper return within ten days from the date of the notice, as provided by the statute.

 The lower court was in error in its ruling on the plaintiff's preliminary motion to settle the question of law as to whether Chapter 457, Laws of 1948, applied to the transactions involved in this suit, when the court held that, unless the defendant could show that there was a definite act on the part of the State Tax Commission determining the tax to be due and determining a lien to exist therefor, the plaintiff would be entitled to recover in any event. It is not necessary that the Tax Commission make an order of any kind approving a use tax assessment made by the commissioner, unless the taxpayer applies in writing to the commission for a hearing as provided in Section 10157, Code of 1942. But in view of the conclusion that we have reached on the main question involved in this appeal, it is clear that no harm resulted from the erroneous pronouncement of the trial judge in his ruling on plaintiff's preliminary motion.

For the reasons stated above the judgment of the lower court is affirmed.

Affirmed.