# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00034-SCT

*CELLULAR SOUTH, INC.*

*v.*

*BELLSOUTH TELECOMMUNICATIONS, LLC,*
*f/k/a BELLSOUTH TELECOMMUNICATIONS,*
*INC. AND SUCCESSOR BY MERGER TO*
*BELLSOUTH MNS, INC.*

DATE OF JUDGMENT:                12/10/2015
TRIAL JUDGE:                     HON. WILLIAM H. SINGLETARY
COURT FROM WHICH APPEALED:       HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         SHELDON G. ALSTON
                                 JOHN ERNEST WADE, JR.
                                 JOSEPH ANTHONY SCLAFANI
                                 MATTHEW WADE ALLEN
ATTORNEYS FOR APPELLEE:          GORDON URBAN SANFORD, III
                                 ADAM H. CHARNES
NATURE OF THE CASE:              CIVIL - OTHER
DISPOSITION:                     REVERSED AND REMANDED - 03/02/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     In February 2006, BellSouth Telecommunications, Inc., and BellSouth MNS, Inc.,

filed an *ex parte* motion for a protective order in the Chancery Court for the First Judicial

District of Hinds County. The documents sought to be protected fell into the following four

categories: (1) an August 2005 proposal submitted by BellSouth to the Mississippi

Department of Information Technology Services in response to the Department's request for telecommunications products and services, (2) the Telecommunications Products and Service Agreement between BellSouth and the Department dated November 2005, (3) correspondence between BellSouth and the Department related to the first two documents, and (4) related BellSouth marketing materials. Following legislative amendments in 2015 to the Mississippi Public Records Act of 1983 and to Mississippi Code Section 25-1-100, CellularSouth sought production of the proposal and the contract between the Department and BellSouth. As more fully detailed below, we hold that the chancery court erred in its interpretation of the amended Mississippi Code Section 25-61-11 when it entered an order continuing to protect the contract from production. We further hold that, because the rights in question in the case *sub judice* are created by statute, the Public Records Act, as amended, governs the instant dispute. Accordingly, we reverse and remand for further proceedings consistent with our opinion.

**Introduction**

¶2.    In July 2015, CellularSouth filed its Petition to Revoke Protective Order in which it contended that two amendments to the Public Records Act and to Mississippi Code Section 25-1-100, made after the 2006 entry of the protective order, rendered the August 2005 proposal and resulting contract subject to production pursuant to the Public Records Act. House Bill Number 825, passed by the Legislature in 2015, amended Section 25-61-9 to add a new Subsection 7. The new subsection reads as follows:

> For all procurement contracts awarded by state agencies, the provisions of the contract which contain the commodities purchased or the personal or

2

professional services provided, the price to be paid, and the term of the contract shall not be deemed to be a trade secret or confidential commercial or financial information under this section, and shall be available for examination, copying or reproduction as provided for in this chapter.

The bill added a new Subsection 5 to Section 25-1-100, which reads as follows:

Contracts for personal and professional services that are awarded or executed by any state agency, including, but not limited to, the Department of Information Technology Services and the Department of Transportation, shall not be exempt from the Mississippi Public Records Act of 1983. CeullarSouth contends that the amended provisions operate to remove protected status from the sought-after proposal and contract.

¶3.     In order to stave off CellularSouth's attempt to force production of the contract and proposal, BellSouth contended below and contends on appeal that Mississippi Code Section 25-61-11 insulates the 2006 protective order against subsequent amendments to the Public Records Act.  Section 25-61-11 reads as follows:

The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional law, state or federal statutory law, or decision of a court of this state or the United States which at the time of this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt from the provisions of this chapter.

Of course, Section 25-1-100 is not found within "this chapter," or Title 25, Chapter 61, of the Mississippi Code, so BellSouth's argument does not avail it there.  However, BellSouth contends that, as Section 25-61-9 *is* part of Chapter 61, the amendment to it cannot "be construed to . . .  repeal" it.

¶4.     Below, the trial court agreed with BellSouth.  In denying CellularSouth's Petition to Revoke the 2006 protective order, the trial court wrote:

> The plain language of [Section 25-61-11] provides that the subject amendments should "not be construed to conflict with, amend, repeal or supersede" the 2006 Order of this Court which specifically declared the documents sought herein as "confidential and privileged" and "exempt from the provisions of this chapter." Therefore, the Court must find that the 2015 amendments do not act to remove the exemption from disclosure granted by the 2006 Order.

For the reasons given below, we hold that the trial court erred in interpreting Section 25-61-11 as it did.

## Analysis

### The Interpretation of Mississippi Code Section 25-61-11

¶5. Before interpreting Section 25-61-11, it is beneficial to look at legislative amendments to the applicable section of the Mississippi Public Records Act of 1983. Section 25-61-9 addresses records furnished to public bodies by third parties that contain trade secrets or confidential financial information. It allows the third parties in question to seek protective orders to protect such records from disclosure. *See* Miss. Code. Ann. § 25-61-9(1). Following the addition of Subsection 7, a certain subset of information which previously would have been exempted from disclosure as proprietary became, as it were, exempted from the exemption. The narrow question presented in the case *sub judice* is whether Section 25-61-11 indicates that the Legislature intended the statutes to be subservient to a court order entered after the Public Records Act was first passed in 1983.

¶6. BellSouth takes the position that Section 25-61-11 means that the new provision of Section 25-61-9(7) cannot overcome a court order that contradicts it. It contends that the phrase "or thereafter" applies such that any order, whether entered before the effective date

4

of the chapter or after the effective date of the chapter, cannot be overcome by the language of the statute no matter the extent to which said order might conflict with the statute. One problem inherent in what we are calling the BellSouth interpretation, however, is that it applies to *any* order, whenever entered. Another problematic corollary of the BellSouth position arises from the fact that the language of Section 25-61-11 is much broader than mere amendments to the Public Records Act and provides, instead, that "the provisions of this chapter" may not be construed to countermand an order. If BellSouth is correct, then a protective order entered last week in direct contravention and after the effective date of Section 25-61–9(7) becomes immediately challenge-proof and not subject to review by any higher court. Effectively, the Legislature will have robbed itself of the power to amend the Act by broadening the category of records subject to production, but the Legislature has sought to do that very thing in amending Section 25-61-11.

¶7.    "[E]very statute must be given meaning unless found to be in hopeless conflict with another statute. . . ." *Mississippi Pub. Serv. Comm'n v. Mun. Energy Agency of Miss.*, 463 So. 2d 1056, 1059 (Miss. 1985). BellSouth's interpretation of Section 25-61-11, according to which all orders protecting documents from disclosure are rendered impervious to conflict with the language of the Act itself no matter when entered, would be, if accurate, in hopeless conflict with the clear legislative intent of broadening the scope of unprotected documents evidenced by the addition of Section 25-61-9(7).

¶8.    CellularSouth proposes another reading of Section 25-61-11 that would remove the conflict with the 2015 amendments. It contends that Section 25-61-11 operates to shield all

5

laws and orders that existed at the time the Mississippi Public Records Act was enacted in 1983. It further contends that the words "or thereafter" mean that such orders and laws that were in effect in 1983 would continue to be protected at all times after the Act became effective, rather than the language of the act could not be cited to modify or supersede any orders or laws that came into effect after the effective date.

¶9. CellularSouth supplies us with the more plausible interpretation. A statute is ambiguous when open to two or more reasonable interpretations. *Tellus Operating Group, LLC v. Maxwell Energy, Inc.*, 156 So. 3d 255, 261 (¶ 16) (Miss. 2015). For the foregoing reason, *i.e.*, that the BellSouth interpretation hopelessly conflicts with the Legislature's attempts to broaden the range of records subject to production, the BellSouth interpretation falls short of reasonableness. However, even if it were reasonable, the principles of statutory construction favor the CellularSouth interpretation. *See City of Tchula v. Miss. Public Serv. Comm'n*, 187 So. 3d 597, 599 (¶ 6) (Miss. 2016) ("[W]here the language in a statute is plain and unambiguous, 'it is not within the province of this court to add to the law as the Legislature has written it.'")

¶10. It is our job to determine legislative intent from the language of the act as a whole, and not to separate from the statutory herd one part alone. *Wilson v. State*, 194 So. 3d 855, 872 (¶ 57) (Miss. 2016) (citing *Lewis v. Hinds Cty. Circuit Court*, 158 So. 3d 1117, 1122 (¶ 13) (Miss. 2015)). In short, the CellularSouth interpretation allows Section 25-61-11 to jibe far better with the remainder of the Mississippi Public Records Act of 1983, in that it acknowledges the 2015 legislative broadening of the scope of records subject to disclosure.

Put differently, statutes within an Act should be construed to "harmonize with" one another, ***Owens Corning v. Miss. Ins. Guar. Ass'n***, 947 So. 2d 944, 946 (¶ 7) (Miss. 2007), and interpreting Section 25-61-11 in a manner that prevents the plain language of other parts of the Act from correcting contradictory or even erroneous orders certainly fails to do so.

¶11.   We depart from the instant issue with a word of caution.  As discussed below, we do not have a copy of the proposal or contract at issue in the record.  Accordingly, we cannot know the extent to which, if at all, they fall within the exception created by Section 25-61-9(7).  The trial court will of course need to consider the issue on remand.

**II.      Section 25-1-100**

¶12.   CellularSouth further argues that House Bill 825, which amended Section 25-61-9 in 2015, also amended Section 25-1-100 in a manner which mandates production of the subject contract.   Section 25-1-100(5), the new language, reads, "Contracts for personal and professional services that are awarded or executed by any state agency, including, but not limited to, the Department of Information Technology Services and the Department of Transportation, shall not be exempt from the Mississippi Public Records Act of 1983."  Here, we do not know enough about the contents of the contract to know whether it is a contract for "personal and professional services."  The affidavit of Dennis Brackin that was submitted with BellSouth's 2006 Joint Petition for a Protective Order appears in the record.  Brackin's affidavit gives some indication of the nature of the contract, but not enough for the Court to decide on appeal whether it falls within the scope of Section 25-1-100(5).  However, the issue is one that can be decided by the trial court on remand.  If the trial court were to find

the contract is indeed one for "personal and professional services," then by the plain language of Section 25-1-100(5) it would not be exempt from the Public Records Act.

## III.    Retroactivity

¶13.    BellSouth argues that the amendments to Section 25-1-100 and Section 25-61-9 are presumed to be prospective only and therefore do not apply to the subject contract. BellSouth cites, *inter alia*, ***Boston v. Hartford Accident & Indemnity Co.***, 822 So. 2d 239 (Miss. 2002), *overruled on other grounds by **Capital City Insurance Co. v. G.B. "Boots" Smith Corp.***, 889 So. 2d 505 (Miss. 2004), for the proposition that "statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression." ***Id.*** at 245 (¶ 21).

> A statute will not be given retroactive effect unless it is manifest from the language that the legislature intended it to so operate. It will not be construed as retroactive unless the words admit of no other construction or meaning, and there is a plain declaration in the act that it is. In short, these cases illustrate a well-settled attitude of statutory interpretation: A preference that it be prospective only, and a requirement that there should be a clearly expressed intent in the act to make it.

*Mladinich v. Kohn*, 186 So. 2d 481,484 (Miss. 1966). However, the question of whether amendments to statutes apply to existing public records covered by the Public Records Act is different from the questions normally considered in the context of the retroactivity of statutory amendments. For example, in ***Boston***, the question was whether the Tort Claims Act would apply to litigation resulting from a death that occurred before the Tort Claims Act was enacted. ***Boston***, 822 So. 2d at 245. At issue was whether litigation between the parties would or could continue under the law as it existed at the time of the event or under the then-

new Tort Claims Act. Accordingly, the question involved the application of a wholly new statute – as opposed to an amendment to an existing statute – that modified existing rights that existed independently of and before the existence of the statute.

¶14. The Supreme Court of Mississippi has had myriad opportunities to consider whether new statutes, or amendments to statutes, should be given retroactive effect. The opportunities to do so date back as far as the middle of the nineteenth century, and most, like *Boston*, address the effect of new statutes on rights that preexist the statute and, of course, do not derive from the statute. In *Brown v. Wilcox*, 22 Miss. 127 (1850), the Legislature had passed a new seven-year statute of limitations affecting the execution of judgments. *Id.* at 129. The question presented was whether the new seven-year period would bar execution of a judgment when the attempt to execute thereupon occurred more than seven years after the entry of the judgment but less than seven years after the passage of the new statute. *Id.* at 130. The *Brown* Court held that, due to express statutory language, the statute was not retroactive in the sense that the new seven-year period began running, as to unexpired judgments that predated it, on the effective date of the statute. *Id.* Accordingly, the statute did not bar the new attempt to execute the judgment.

¶15. In *Klaas v. Continental Southern Lines*, 225 Miss. 94, 82 So. 2d 705 (1955), the issue was whether a statute that, for the first time allowed joint tortfeasors to obtain contribution among themselves would apply to a judgment entered before the statute's effective date.

9

¶16. In response to BellSouth's argument and citations, CellularSouth, *inter alia*, cites a long line of cases that hold that, in situations involving the repeal or modification of statutes that create the right in question, "a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause." ***Stone v. Indep. Linen Serv. Co.***, 212 Miss. 580, 586-587, 55 So. 2d 165, 168 (1951). The ***Stone*** Court considered an appeal from the Circuit Court of the First Judicial District of Hinds County in which the trial court ruled against the Chairman of the State Tax Commission and in favor of Linen Service Company. *Id.* at 583, 166. At issue was whether Linen Service Company owed use taxes that the Tax Commission sought pursuant to a tax statute that was amended in 1948. *Id.* at 167. Under the old version of the statute, Linen Service Company owed the taxes, but under the amended version of the statute it did not. *Id.* at 168. The taxes alleged to be owed accrued, if at all, prior to the effective date of the amendment. *Id.* at 167. The ***Stone*** Court reasoned as follows:

> In discussing the effect of a repealing statute or a statute modifying a previous statute on rights or remedies created solely by the repealed or modified statute, this Court, in the case of ***Deposit Guaranty Bank and Trust Company v. Williams***, 193 Miss. 432, 9 So. 2d 638, 639, said:
>
>> Many decisions in this state have affirmed the rule, which generally prevails, that the effect of a repealing statute is to abrogate the repealed statute as completely as if it had never been passed, and that a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause. ***Crow v. Cartledge***, 99 Miss. 281, 54 So. 947, Ann. Cas. 1913E, 470, and ***Musgrove v. Vicksburg & N.***

10

> ***Railroad Co.***, 50 Miss. 677, are among the number of such cases in this state.
>
> The result of this rule is that every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification,—save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right. ***Bradstreet Co. v. City of Jackson***, 81 Miss. 233, 236, 32 So. 999.

***Stone***, 55 So. 2d at 168. In the end, the ***Stone*** Court held that because the Tax Commission had failed to do enough to vest the right to the tax proceeds in the State, Independent Linen did not owe the amount sought. ***Id.*** at 590, 169-170. In other words, the Court applied the amended version of the statute to determine that taxes that would have accrued prior to its passage never accrued. "[A] statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute. . . ." ***Stone***, 55 So. 2d at 168.

¶17.     The Court acknowledged the above-described rule as recently as ***Hudson v. Moon***, 732 So. 2d 927 (Miss. 1999), where it applied it to the legislative appeal to mortmain. ***Hudson***, 732 So. 2d at 931 (¶ 14). However, the ***Hudson*** Court did not apply the statute as amended because it held that the heirs therein had a vested right in the land at issue. The rule dates back even further than the 1911 case of ***Crow v. Cartledge***, 99 Miss. 281, 54 So. 947 (1911), where the Court applied it to the repeal of a sales-tax statute. There, the Court wrote as follows:

> The effect of a repealing statute of this character is to abrogate the repealed statute as completely as if it had never been passed. It is considered as a law which never existed, except for suits which were commenced and concluded

11

> while the repealed law was in force. By the repeal, the right to collect the unpaid tax was taken away, whether suit was pending therefor or not. The cause of action was taken away, and the suit must end.

*Crow*, 54 So. at 948.

¶18.    The rights and remedies at issue here are created solely by the Public Records Act, and we therefore hold that the principle treated in *Stone* and *Hudson* controls the issue of retroactive application of the 2015 amendments in the case *sub judice*. As a result, absent an applicable saving clause, a final judgment, or a loss to BellSouth of a vested right, we must apply the Public Records Act to the instant case as though it has always read as it reads today. BellSouth contends that Section 25-61-11 acts as a saving clause and saves the 2006 order from the application of the amended statutes. However, as shown in the analysis above regarding its application, Section 25-61-11 does not shield the order at issue here. BellSouth further contends that the 2006 protective order is a final judgment, but the order itself contains language that allows for its replacement or revocation by future order of the trial court. Finally, BellSouth identifies no vested right created by the 2006 protective order that will be lost. BellSouth does attempt to distinguish *Stone*, but in the end misses the point the *Stone* Court made about vested rights. BellSouth correctly contends that the *Stone* Court applied the amended statute to the taxes alleged to have accrued (prior to amendment) against Independent Linen because the State failed to do that which was necessary to obtain a lien on the taxpayer's property. *See Stone*, 55 So. 2d at 169. BellSouth contrasts the Tax Commission's omissions with its own actions in fulfilling all legal requirements for obtaining a protective order. However, in doing so, BellSouth misses the ultimate point of the *Stone*

holding, which is that the State's right to the money never vested in the state due to the Tax Commission's omissions.

¶19. Moreover, the statutory framework of the Public Records Act belies any contention that the Legislature intended to create rights in favor of the Department or BellSouth. The structure and wording of the Public Records Act as a whole indicates that the right the Legislature intended to create was the right of the public to the disclosure of public records. For example, Mississippi Code Section 25-61-2, adopted in and unchanged since 1996, reads as follows:

> It is the policy of this state that public records shall be available for inspection by any person unless otherwise provided by this chapter; furthermore, providing access to public records is a duty of each public body and automation of public records must not erode the right of access to those records. As each public body increases its use of, and dependence on, electronic record keeping, each public body must ensure reasonable access to records electronically maintained, subject to records retention.

If the above-quoted language, in which the Legislature speaks of access to public records as something available to "any person" were not enough to convince us that the Public Records Act focuses on the right of the public to have access, Mississippi Code Section 25-61-5(1)(a) expressly makes public records the property of the public.

¶20. Based on the language of the Public Records Act, the Legislature intended the right affected by the 2015 amendments discussed above to be the right of the public to have access to materials that belong to the public. The materials sought by CellularSouth do not belong to BellSouth or to the Department of Information Technology Services, but – again – to the public.

13

> If a court cannot draw a conclusion about a statute's temporal reach through application of its normal rules of construction, it asks whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment; if so, then the court applies the presumption against retroactivity by construing the statute as inapplicable to the event or act in question.

82 C.J.S. *Statutes* § 575 (2009); *see also* **Fernandez-Vargas v. Gonzales**, 548 U.S. 30, 37-38 (2006). Ostensibly, BellSouth's contention that retroactive application of the amendments affects some right to keep the materials from production has some allure, but the Legislature's clear pronouncement that the right of the public to have access to public documents quickly cuts through it. If there is an event to which rights attach in the case *sub judice*, it is CellularSouth's public records request for the materials, which occurred after the effective dates of the amendments.

¶21. Pursuant to the foregoing reasoning, retroactivity of the amendments is a nonissue and does not apply to protect or maintain the 2006 protective order at issue.

### Conclusion

¶22. Pursuant to the foregoing, we reverse the order of the Chancery Court of Hinds County denying CellularSouth's Petition to Revoke Protective Order. We remand the case for further proceedings consistent with our opinion.

¶23. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, BEAM AND CHAMBERLIN, JJ., CONCUR. MAXWELL, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

14

**MAXWELL, JUSTICE, DISSENTING:**

¶24. With respect to the majority, I find it places the cart before the horse. Indeed, the majority offers "a word of caution" about its analysis. (Maj. Op. at ¶ 11). It admits "we cannot know the extent to which, *if at all,* [the requested documents] fall within the exception created by Section 25-61-9(7)." (Maj. Op. at ¶ 11) (emphasis added). Yet, rather than taking the prudent approach—actually finding out what documents we are dealing with and if they are subject to Section 25-61-9(7) or "protected" by the 2006 order—the majority jumps right in and begins interpreting and making declarations about statutes. So essentially, the majority goes back and forth for pages analyzing Sections 25-61-9(7) and 25-61-11, but concedes it is operating blindly and cannot really say there is an actual controversy that raises a true conflict between the statutes.

¶25. Let me be clear, the majority's statutory discussion is thorough. And I do not suggest the majority is wrong in the bulk of its analysis of what statute would control *if* there are indeed supposedly protected documents that raise a conflict between Section 25-61-11's shielding provision and the recently amended transparency law in Section 25-61-9(7). But I find it premature for this Court to declare we are at a statutory impasse, when it admits it does not know what documents we are dealing with, and if they are even subject to Section 25-61-9(7) or covered by the 2006 protective order. Because of this premature statutory interpretation, I respectfully dissent.

¶26. The record shows the Mississippi Department of Information Technology Services awarded BellSouth the RFP 4000-1 contract on November 30, 2005. This contract was

15

supposed to end in 2016. On February 16, 2006, after other public records requests, BellSouth sought and was granted a protective order, sealing the RFP 4000-1 contract from disclosure. Citing the recent changes to Sections 25-61-9(7) and 25-1-100, Cellular South submitted its public records request to ITS on July 9, 2015.

¶27. I find it important that the 2015 public records request was for "RFP 4000-1 *and the Contract associated with RFP 4000-1 for the last three years.*" (Emphasis added.) Both parties agree that a significant amount of time has passed since the RFP 4000-1 contract was awarded in 2005. And the 2006 protective order is very specific in the documents it protects. As the majority notes, the order protects the agreement "dated November 2005" and the related proposal and other materials. (Maj. Op. at ¶ 1). But the record indicates the RFP 4000-1 contract was amended or modified—at the very least when the term was extended from 2016 to 2018. Yet the chancellor made no finding, on the record, whether the 2005 contract or some more recent agreement covering "the last three years" is the operative agreement between ITS and BellSouth, and whether the 2006 order even applies. He simply cited Section 25-61-11, without addressing this concern. If in fact the records sought by Cellular South are not protected by the 2006 order, then there is no "decision of a court of this state" that raises the potential conflict between Sections 25-61-9(7) and 25-61-11.[1]

¶28. Rather than preemptively engaging in statutory interpretation of a *potential* statutory conflict, as the majority does, I find the more reasonable approach at this procedural point is to determine what exact agreement is in place and whether it is subject to the 2006

---

[1] Miss. Code Ann. § 25-61-11 (Supp. 2016).

16

protective order.  So I would remand for additional findings.  After these findings are made, the cards will be on the table, and if a statutory conflict emerges we can proceed without guessing.