# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 8, 2021

Lyle W. Cayce
Clerk

No. 20-60451

Kimberly Harper; Miranda Parrott; Roy Allen;
Shennetta Draughn; Forrest W. Massa, Jr.;
Carey Stewart; Cynthia C. Kelly,

*Plaintiffs—Appellants*,

*versus*

Southern Pine Electric Cooperative,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
No. 2:18-CV-31

---

Before Higginbotham, Smith, and Dennis, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Plaintiffs, who are member-ratepayers of Southern Pine Electric Co-operative, claim that Southern Pine is required to distribute to them $112.5 million in "excess revenues." Because Mississippi law does not impose that requirement, we affirm the dismissal for failure to state a claim.

I.

Southern Pine is an electric cooperative subject to Mississippi's Electric Power Association Law. Miss. Code Ann. § 77-5-201 *et seq.* (2016).

No. 20-60451

Mississippi requires cooperatives like Southern Pine to distribute to their members all "[r]evenues and receipts not needed" for "operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe." § 77-5-235(5).[1]

According to plaintiffs, as of 2016, Southern Pine held $248 million in accumulated income—"equal to roughly 58% of its assets." Plaintiffs maintain that that level of accumulated income "far exceeds what is reasonably necessary to maintain reasonable working reserves . . . ." Thus, because Southern Pine has failed to refund "excess revenues," plaintiffs contend that it has violated Section 20 of the 1936 Electric Power Association Act—the previously enacted version of § 77-5-235(5).

Plaintiffs sued in state court, and Southern Pine removed to federal court, asserting jurisdiction under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. After the district court granted plaintiffs' motion to remand, a panel of this court reversed that decision. We determined that "[t]he requirements for federal officer removal" were met, so the federal court had jurisdiction. *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 201 (5th Cir. 2019).

Soon thereafter, plaintiffs filed their fourth amended complaint, asserting nine causes of action, only one of which is pressed on appeal. Relevant here, plaintiffs claim that Southern Pine improperly retained approximately $112.5 million in excess revenue, which, according to plaintiffs, violated Section 20.[2] Southern Pine moved, under Federal Rule of Civil

---

[1] Although, as we discuss *infra*, plaintiffs contest which version of the statute applies, the language of this portion of both the 2016 and the 1936 versions is identical. *Compare* § 77-5-235(5), *with* 1936 Miss. Laws 351.

[2] Plaintiffs conjure up that specific number by looking to requirements imposed by

No. 20-60451

Procedure 12(b)(6), to dismiss for failure to state a claim upon which relief can be granted. The district court held that the modern version of the statute, § 77-5-235(5), applied retroactively, and, in any event, plaintiffs failed to state a claim under either version. On that reasoning, the district court granted Southern Pine's motion and dismissed with prejudice. Plaintiffs appeal.

## II.

We must first determine which version of the statute applies. Plaintiffs assert that, because they seek only to redress harms that occurred before 2016, the modern version of the statute ought not apply under ordinary principles of statutory interpretation. Southern Pine counters that the presumption against retroactivity does not apply, because the 2016 statute repealed and replaced the previously enacted version. We agree with Southern Pine.

## A.

The general rule in Mississippi is that "statutes will be construed to have a prospective operation only, unless a contrary intention is manifested by the clearest and most positive expression." *Hudson v. Moon*, 732 So. 2d 927, 930–31 (Miss. 1999). But an exception exists "in situations involving

---

one of Southern Pine's federal lenders. Cooperatives such as Southern Pine fund their operations by borrowing money from federal lenders and retaining certain earnings allocated as "patronage capital." Southern Pine receives loans from the Rural Utilities Service, a federal agency that "makes loans and loan guarantees to finance the construction of electric distribution, transmission and generation facilities . . . ." 7 C.F.R. § 1710.100 (2020). Rural Utilities Service requires some of its borrowers to seek its approval before issuing any distributions to its members. 7 C.F.R. § 1717.617 (2020). It exempts borrowers from its pre-approval requirement if, among satisfying other conditions, "[a]fter giving effect to the distribution, the borrower's equity will be greater than or equal to 30 percent of its total assets . . . ." *Id.* § 1717.617(a). To reach their specific claim for $112.5 million, plaintiffs effectively contend that anything above the 30% safe-harbor requirement is excess revenue.

the repeal or modification of statutes that create the right in question . . . ." *Cellular S., Inc. v. BellSouth Telecomms., L.L.C.*, 214 So. 3d 208, 214 (Miss. 2017). In those situations, "a statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the repealing or modifying statute contains a saving clause." *Id.* (quoting *Stone v. Indep. Linen Serv. Co.*, 55 So. 2d 165, 168 (Miss. 1951)). Thus, "every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute . . . ." *Id.* (quoting *Stone*, 55 So. 2d at 168).

Plaintiffs do not contest that the modern statute modified the 1936 version, thus bringing it within the general contours of the *Stone* exception. Instead, they contend that, for two independent reasons, the *Stone* exception doesn't apply. First, they maintain that the exception applies only in "lawsuits that involve a public right . . . and lawsuits between the state and a private individual, firm or corporation" and that the present dispute does not fall within either category. Second, they aver that the exception is inapplicable here because to apply it would abrogate a vested right. The former contention is legally erroneous, the latter factually so. Thus, the modern statute controls.

1.

Plaintiffs maintain that the *Stone* exception does not apply where, as here, both sides are private entities and there is no public right at stake. That finds no basis in law. Plaintiffs claim that *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271, 1275 & n.2 (Miss. 1987), distinguished, for purposes of *Stone*, "litigation between the state . . . and an individual, firm or corporation" and "litigation between private individuals." On further analysis, however, that distinction evaporates.

Four years after *Ladner*, the Supreme Court of Mississippi reviewed

the effect of a statutory amendment in a probate dispute between private individuals. *See Bell v. Mitchell*, 592 So. 2d 528 (Miss. 1991). The court determined that the amendment "should be given retroactive operation and applied" it to the case before it. *Id.* at 533. It did the same the following year in a divorce proceeding. *See Massingill v. Massingill*, 594 So. 2d 1173, 1176 (Miss. 1992). And federal courts in this circuit have followed suit.[3] Thus, both this court and the Supreme Court of Mississippi have applied *Stone* in a way that is incompatible with plaintiffs' proposed rule.[4] Plaintiffs fail even to mention those cases, much less distinguish them.

Alternatively, plaintiffs contend that the *Stone* exception applies only to lawsuits that involve a public right. The caselaw on which they rely for that proposition, however, is inapposite.

First, plaintiffs quote from *Cellular South*, which states, 214 So. 3d at 213, that "the question of whether amendments to statutes apply to existing public records covered by the Public Records Act is different from the questions normally considered in the context of the retroactivity of statutory amendments." Plaintiffs contend that the relevant difference in that case is that it involved a public right. But that's wrong. *Id.* The "differen[ce]" to which the court referred was that of the retroactive "application of a wholly new statute—as opposed to an amendment to an existing statute—that modified existing rights that existed independently of and before the existence of the statute." *Id.* It is not for another six paragraphs that the *Cellular South* court discusses public rights. *Id.* at 215.

---

[3] *See, e.g.*, *Wilson v. William Hall Chevrolet, Inc.*, 871 F. Supp. 279, 281 (S.D. Miss. 1994), *aff'd in part and rev'd in part on other grounds sub nom. Wilson v. Nelson Hall Chevrolet, Inc.*, No. 95-60107, 1996 WL 46788 (5th Cir. 1996) (per curiam).

[4] Importantly, none of the aforementioned cases involved public rights, plaintiffs' second category to which they contend *Stone* is confined.

Although the statute at issue in *Cellular South* "create[d] . . . [a] right of the public," that was relevant only because that meant that it did not "create rights in favor" of the litigants. *Id.* The holding, therefore, turned on the fact that there was no private right the amended statute abrogated—it did not depend on the existence of a public right.

Plaintiffs' reliance on *Mississippi Department of Corrections v. Roderick & Solange MacArthur Justice Center*, 220 So. 3d 929 (Miss. 2017), is similarly unavailing. That case, like *Cellular South*, discussed public rights only in the context of deciding whether the plaintiff had a vested right that retroactive application of the amended law would abrogate. *Id.* at 936–39. *Stone* applied because the statute did not establish "any type of private, vested right . . . ." *Id.* at 938. The court therefore "rejected" the argument that "the amended law abrogate[d] a vested right" and held that the statute at issue "ha[d] no impermissible retroactive effect in [that] case." *Id.* As in *Cellular South*, then, the court appropriately applied *Stone*, because doing so did not abrogate a vested right—the existence of a public right was entirely incidental to that decisive fact.

Plaintiffs can't point to any case indicating that the *Stone* exception applies only in the limited circumstances for which they advocate.[5] Instead, both the Supreme Court of Mississippi and federal courts in this circuit have applied the *Stone* exception where, were we to accept plaintiffs' contention, it was inapplicable. *See, e.g.*, *Massingill*, 594 So. 2d at 1176; *Wilson*, 1996 WL 46788, at *1 (affirming the district court's application). And we see no reason to place talismanic significance on public rights for purposes of the *Stone* exception. Instead, public rights are but one area in which a retroactive appli-

---

[5] Although plaintiffs make much of *Ladner*, even by their account it cannot be a full statement of the *Stone* exception's application—it makes no mention of suits involving public rights. *See generally Ladner*, 512 So. 2d 1271.

cation of a statutory amendment will not abrogate a vested right.

We therefore take at face value the characterization by the Supreme Court of Mississippi: "[E]very right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute . . . save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right." *Cellular S.*, 214 So. 3d at 214 (quoting *Stone*, 55 So. 2d at 168). Unless plaintiffs can demonstrate that retroactive application would either impair the obligation of a contract or abrogate a vested right, the modern statute applies retroactively. With no contract at issue, our inquiry is confined to whether retroactive application would abrogate a vested right.

2.

As stated above, plaintiffs are correct that we may not apply a modifying statute retroactively if to do so would "abrogate a vested right." *Cellular S.*, 214 So. 3d at 214 (quoting *Stone*, 55 So. 2d at 168). Regardless, they have no vested rights under the 1936 statute.

The Supreme Court of Mississippi defines a "vested right as a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute." *Roderick*, 220 So. 3d at 935 (cleaned up). To be vested, the right must have "become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute."[6]

Moreover, a future interest may be vested if it "confer[s] a fixed right

---

[6] *Est. of Greer v. Ball*, 218 So. 3d 1136, 1140 (Miss. 2017) (quoting *Vested*, BLACK'S LAW DICTIONARY (abr. 9th ed. 2010)).

of taking possession in the future." *Vested*, BLACK'S LAW DICTIONARY (11th ed. 2019) (cleaned up). To do so, it must satisfy two requirements. First, there must "be no condition precedent to the interest's becoming a present estate" and, second, it must be "theoretically possible to identify who would get the right to possession if the interest should become a present estate at any time." *Id.* (cleaned up). Put another way, it must be "not contingent" upon a future event taking place. *Greer*, 218 So. 3d at 1140 (quotation omitted).

Plaintiffs purport to enjoy a vested right in excess earnings held by Southern Pine. That claim is based on the statutory language, which provides that "the revenues and receipts of a corporation shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe." 1936 Miss. Laws 351. The statute further states that revenues "not needed for these purposes shall be returned to the members, by the reimbursement of membership fees, or by way of general rate reductions, as the board may decide." *Id.*

At bottom, plaintiffs claim that, because excess revenues "shall," i.e., must, "be returned to the members," they possess a vested right in those revenues. *Id.* That theory is misplaced because it focuses on the wrong part of the statute. The issue is not whether the board must return excess revenues "to the members . . . ." *Id.* It must—the statute is unambiguous in that respect. But plaintiffs gloss over the relevant question: Who gets to determine when revenues become "not needed" for the defined purposes such that they must "be returned to the members"? *Id.* And the statute is unambiguous on that question as well. It leaves that discretion to "the board" as it "may from time to time prescribe." *Id.*

No. 20-60451

Therefore, the legislature left it up to the board to determine when its revenues were no longer "needed" for specified purposes. *Id.* Only once the board makes that determination does the statute require it to return those revenues to the members. The right that plaintiffs assert, then, is contingent upon a determination of the board. And a right that is contingent is, definitionally, not vested.[7] Because the 1936 statute did not grant plaintiffs a vested right, the modern statute provides the applicable law.

## III.

Having concluded that the modern statute applies, the remaining question—whether plaintiffs have stated a claim for relief under § 77-5-235(5)—is easy: They have not. And when asked at oral argument, they conceded as much, stating that plaintiffs' "claims necessarily depend on application of the pre-amendment version of the statute."[8] Nonetheless, we explain briefly why the statute does not provide the relief plaintiffs seek.

In summary, the fourth amended complaint alleges that Southern Pine retained $248 million in accumulated income as of 2016. Of that, plaintiffs claim they are entitled to approximately $112.5 million. Such a distribution would reduce Southern Pine's asset-to-equity ratio to 30%, which plaintiffs assert is the ceiling beyond which all revenues become excessive.

## A.

---

[7] *Greer*, 218 So. 3d at 1140 ("A right is vested when it has 'become . . . not contingent . . . .'" (quoting *Vested*, BLACK'S LAW DICTIONARY (abr. 9th ed. 2010)).

[8] Even if the 1936 statute applied, the above analysis compels the conclusion that plaintiffs have not stated a claim under that version either. Both versions of the statute grant the board discretion to determine when it has sufficient revenue such that it may distribute excess to its members. Thus, the claim plaintiffs bring—asserting a right to all revenue above a specific asset-to-equity ratio—is not cognizable under either statute. To hold as much would be to destroy the discretion that the legislature gave the board.

No. 20-60451

Like the prior version, the amended statute grants the board discretion over how to allocate the revenue the cooperative receives. It permits the board to determine, as it "may from time to time prescribe," the adequate levels of revenues that should be held as "reserves for improvement, new construction, depreciation and contingencies . . . ." § 77-5-235(5). And, as explained above, the board must distribute the leftovers—all "[r]evenues and receipts not needed for these purposes"—to the members. *Id.* But it need not do so until it has determined that the revenues are truly excess, i.e., "not needed" as "reserves." *Id.* Thus, to state a claim, plaintiffs must identify revenues beyond what is "needed" for the purposes outlined in the statute—as determined *by the board. Id.*

That is not the claim plaintiffs press.[9] Instead, they seek to impose a specific asset-to-equity ratio beyond which any and all revenues must be deemed excessive and returned to the member-ratepayers. One could urge

---

[9] For the first time on appeal, plaintiffs attempt to reframe their claim. As they now describe it, their fourth amended complaint alleged "that Southern Pine retained and accumulated revenues prior to July 1, 2016 that were *not* devoted to operating and maintenance expenses, related debt obligations, or specific working reserves . . . ." Tellingly, plaintiffs provide no record citation to support that assertion. And a review of the complaint reveals that that claim was not brought. Instead, plaintiffs asserted before the district court that "$248,000,000 far exceeds what is reasonably necessary to maintain reasonable working reserves . . . ."

Plaintiffs then concluded that Southern Pine was required to return to plaintiffs "all *excess* revenues and receipts above 30% of its assets that it accumulated prior to July 1, 2016 . . . ." Thus, instead of alleging that there existed revenues that Southern Pine had set aside as excessive, they asserted that all revenue "in excess of the recommended 30% asset-to-equity ratio . . . . should be returned to the member-ratepayers . . . ."

Even assuming plaintiffs' remodeled complaint would survive a Rule 12(b)(6) motion, they cannot do so by reframing it for the first time on appeal. *See, e.g.*, *Belliveau, Inc. v. Barco, Inc.*, No. 19-50717, 2021 U.S. App. LEXIS 2489, at *9 n.3 (5th Cir. Jan. 28, 2021) (stating that a party "cannot raise an argument for the first time on appeal" (cleaned up)) (citation omitted).

that plaintiffs' proffered ratio of 30% is good policy; Southern Pine argues vigorously that it's not.  In any event, it is not what the statute requires. Plaintiffs do not have a right to revenues until the board deems that those revenues are "not needed" for other purposes.  Because the board has not done so, plaintiffs fail to state a claim upon which relief can be granted.

AFFIRMED.